[No. B218178. Second Dist., Div. Three. Aug. 30, 2011.]

FREMONT REORGANIZING CORPORATION, Cross-complainant and Appellant, v.
ALAN W. FAIGIN, Cross-defendant and Respondent.

1154

## COUNSEL

Bate, Peterson, Deacon, Zinn & Young, Linda Van Winkle Deacon, Stephanie M. Saito and Barri Lyn Friedland for Cross-complainant and Appellant.

Woolls & Peer, H. Douglas Galt; Kellman Hoffer, Daniel P. Hoffer and Matthew N. Falley for Cross-defendant and Respondent.

## OPINION

**CROSKEY, Acting P. J.**—Alan W. Faigin sued Fremont Reorganizing Corporation (FRC) alleging that he was jointly employed by both FRC and Fremont General Corporation (Fremont General) as in-house counsel. Faigin alleges several counts against FRC relating to the termination of his employment. FRC filed a cross-complaint against Faigin alleging that he wrongfully informed the Insurance Commissioner (Commissioner), as liquidator of a related company, Fremont Indemnity Company (Fremont Indemnity), that his former clients were planning to auction certain artworks that he claimed were owned by Fremont Indemnity. The Commissioner then commenced an adversary action against Fremont General and FRC in the liquidation proceeding.

Faigin filed a special motion to strike the cross-complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16).[1] The trial court concluded that each count alleged in the cross-complaint arose from protected activity

---

[1] All further statutory references are to the Code of Civil Procedure unless stated otherwise.

under the anti-SLAPP statute, that FRC had failed to demonstrate a probability of prevailing on its claims, and that the litigation privilege applied. The court therefore granted the motion, striking the cross-complaint in its entirety. FRC appeals the order granting the special motion to strike and an order awarding Faigin attorney fees as the prevailing cross-defendant on the motion.

We conclude that each count alleged in the cross-complaint arises from protected activity under the anti-SLAPP statute and that FRC has not shown that Faigin's conduct was "illegal as a matter of law" under the rule from *Flatley v. Mauro* (2006) 39 Cal.4th 299 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*) so as to make the anti-SLAPP statute inapplicable. We also conclude that FRC established a probability of prevailing on its counts for breach of confidence and breach of fiduciary duty and that the litigation privilege is inapplicable in an action by a former client against an attorney arising from breach of professional duties. FRC, however, failed to establish a probability of prevailing on two other counts. We therefore will affirm in part and reverse in part the order granting the special motion to strike and will reverse the order awarding attorney fees with directions to the trial court to determine whether Faigin's partial success entitles him to a fee award and, if so, the amount of the award.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Factual Background*

FRC, formerly known as Fremont Investment & Loan, was a bank until it ceased doing business in July 2008 and changed its name to Fremont Reorganizing Corporation. FRC and Fremont Indemnity are subsidiaries of Fremont General.

Faigin began to work as in-house counsel for Fremont General in approximately 1983. As in-house counsel, he provided legal services to Fremont General and its subsidiaries, including FRC and Fremont Indemnity.

The Commissioner commenced an involuntary liquidation proceeding against Fremont Indemnity in June 2003. Fremont Indemnity was declared insolvent and the Commissioner was appointed its liquidator in June 2003, and Faigin ceased acting as counsel for Fremont Indemnity at that time. The court issued an order in July 2003 prohibiting Fremont Indemnity, its officers, directors, agents, and employees from disposing of or transferring the assets of Fremont Indemnity. The order also directed Fremont Indemnity, its officers, directors, agents, and employees to deliver immediately to the Commissioner all assets and records of Fremont Indemnity in their custody or control

and to disclose to the Commissioner the whereabouts of all assets and records not in their custody or control. In addition, the order directed all of Fremont Indemnity's affiliates to cooperate with the Commissioner in the performance of his duties and to turn over to the Commissioner all records of Fremont Indemnity's assets.

Faigin and Fremont General entered into a written employment agreement in April 2007 appointing him as general counsel for Fremont General. However, it hired Donald E. Royer to replace Faigin as its general counsel in November 2007. Royer assumed Faigin's former duties, while Faigin continued to work as in-house counsel. Faigin notified Fremont General in November 2007 that these changes to his job duties entitled him to certain accelerated compensation payments.

Fremont General notified Faigin on March 12, 2008, that his employment was terminated for cause effective that day. Faigin informed the ·Commissioner the following day that FRC and Fremont General were planning to auction certain artworks that purportedly belonged to Fremont Indemnity. As a result, the Commissioner commenced an adversary action against FRC, Fremont General, and others in May 2008 in the then pending liquidation proceeding. Fremont General filed a voluntary chapter 11 bankruptcy petition in June 2008.

FRC, Fremont General, another Fremont entity, and the Commissioner entered into a settlement agreement in April 2009 providing for payment to the Commissioner of the proceeds from the sale of the artworks and payment of an additional $5 million by FRC to Fremont Indemnity.

2. *Complaint*

Faigin filed a complaint against FRC on January 15, 2009, and filed a first amended complaint on January 23, 2009. He alleges that he was jointly employed by Fremont General and FRC pursuant to a written employment agreement. He alleges that the agreement provided for certain payments if there was a significant change in his job duties and that such a change occurred in late 2007 when he was replaced as general counsel. He also alleges that his employment was wrongfully terminated in March 2008 because of his requests for payments allegedly due him under the agreement.

Faigin alleges counts against FRC for breach of the employment agreement, wrongful termination in violation of public policy, and Labor Code violations, among other counts.[2]

### 3. *Cross-complaint*

FRC filed a cross-complaint against Faigin in April 2009 alleging that Faigin was employed by Fremont General alone. FRC alleges that Faigin also provided legal services to FRC and other subsidiaries of Fremont General and that FRC and Fremont General both were his clients, but that FRC was not his joint employer. FRC also alleges, "on March 13, 2008, Faigin, in breach of his lawyer/client legal, fiduciary and ethical obligations, advised the California Insurance Commissioner, acting in his capacity as the liquidator of Fremont Indemnity Company, that Faigin's former clients were in the process of auctioning certain artworks that Faigin falsely asserted were owned by Fremont Indemnity." FRC alleges that the Commissioner commenced an adversary action against Fremont General, FRC, and others in May 2008 as a result of Faigin's statements made to the Commissioner.

FRC alleges that because Faigin acted as counsel for FRC and Fremont General he owed both entities, as his former clients, a duty to preserve their confidences and other fiduciary duties. FRC alleges that Faigin breached those duties by informing the Commissioner that FRC and Fremont General were planning to auction artworks purportedly belonging to Fremont Indemnity. FRC also alleges that the interests of FRC and "Faigin's other clients" were in conflict with respect to Faigin's statements made to the Commissioner and that it had never consented to Faigin's dual representation of FRC and Fremont General, or any of Fremont General's subsidiaries, as required by rule 3-310(C) of the Rules of Professional Conduct (rule 3-310(C)). FRC alleges further that if it is liable to Faigin on his complaint in this action, it is entitled to equitable indemnity from Faigin because he breached his fiduciary duties owed to FRC as his former client by making the statements to the Commissioner, resulting in damages to FRC. FRC alleges counts against Faigin for (1) breach of confidence; (2) breach of fiduciary duty; (3) violation of rule 3-310(C); and (4) equitable indemnity.

---

[2] Faigin's complaint was tried to a jury in February 2010. The jury found that Faigin was an employee of FRC, that Faigin and FRC were parties to an employment contract, and that FRC breached the contract. The court entered a judgment on February 24, 2010, awarding Faigin $1,347,000 in damages. Both parties have appealed from that judgment (*Faigin v. Signature Group Holdings, Inc.* (B224598, app. pending)). We judicially notice the judgment and the notices of appeal. (Evid. Code, § 452, subd. (d).)

### 4. *Special Motion to Strike*

Faigin filed a special motion to strike the cross-complaint in May 2009. He argued that FRC's allegations in its cross-complaint regarding his statements to the Commissioner were "inaccurate in many respects," but stated, "for purposes of this Motion only Faigin assumes [FRC's] allegations about that conversation to be true."[3] He argued that each count alleged in the cross-complaint arose from his statements made to the Commissioner in connection with the liquidation proceeding and therefore arose from protected activity under the anti-SLAPP statute. He also argued that the litigation privilege and official proceeding privilege precluded his liability on each count, and that FRC could not establish a probability of prevailing on its counts for violation of rule 3-310(C) and equitable indemnity for other reasons. Faigin filed his own declaration in support of the motion and requested judicial notice of several documents.

FRC argued in opposition to the special motion to strike that Faigin violated his duty under Business and Professions Code section 6068, subdivision (e) and rules 3-100 and 3-600 of the Rules of Professional Conduct to maintain his client's confidences, and that his conduct therefore was illegal. FRC argued that an illegal act cannot be protected activity under the anti-SLAPP statute as a matter of law, citing *Flatley, supra,* 39 Cal.4th 299, and that its cross-complaint therefore did not arise from protected activity. FRC also argued that Faigin's conduct was not protected by either the litigation privilege or the official proceeding privilege and that its counts for breach of rule 3-310(C) and equitable indemnity were legally sufficient.

FRC filed a declaration by Royer in opposition to the special motion to strike. Royer declared that a letter from the Commissioner stated that Faigin had informed the Commissioner on March 12, 2008, "that Fremont General was in the process of auctioning certain artworks that Faigin asserted were owned by Fremont Indemnity Corporation." Royer also declared, "At no time did I, or anyone else on behalf of Fremont General Corporation or [FRC], authorize Faigin to divulge any information to any third party, including the California Insurance Commissioner, about the ownership of this artwork or the fact that it was being auctioned."

Faigin asserted in reply, among other arguments, that his statements to the Commissioner were neither illegal within the meaning of *Flatley, supra,* 39 Cal.4th 299, nor improper. He filed his own supplemental declaration stating that he became aware of Fremont Indemnity's possession and ownership of

---

[3] Contrary to FRC's argument, Faigin admitted that he made the statements to the Commissioner as alleged in FRC's cross-complaint, but he did not admit that he violated any fiduciary duty owed to FRC as his former client in so doing.

the artworks from nonconfidential sources, including his personal observation of the artworks on display in Fremont Indemnity's offices and a newspaper article. He also filed an evidentiary objection asserting that the statement in the Royer declaration regarding the information in the letter from the Commissioner was inadmissible hearsay.

At the hearing on the special motion to strike, FRC argued that the trial court should disregard Faigin's arguments and evidence presented for the first time in reply and should allow FRC time to file a supplemental opposition to the motion. The court denied the request and took the matter under submission. In a minute order filed on June 19, 2009, the court sustained Faigin's evidentiary objection to the Royer declaration, granted his request for judicial notice, and granted the special motion to strike. The order stated that each count alleged in the cross-complaint arose from protected speech and that FRC "has failed to demonstrate that it has a reasonable probability of prevailing on the merits given the objectionable portion of Mr. Royer's declaration and given the absolute litigation privilege under Civil Code section 47(b)."

### 5. *Motion for Attorney Fees*

Faigin filed a motion for attorney fees as the prevailing cross-defendant on a special motion to strike under section 425.16, subdivision (c), seeking $34,545 in fees. FRC opposed the motion, challenging only the amount to be awarded. The trial court granted the motion in an order filed on July 30, 2009, awarding $14,000 in fees.

FRC timely appealed the order granting the special motion to strike and the order awarding attorney fees.

### CONTENTIONS

FRC contends (1) Faigin's statements to the Commissioner violated his duties of confidentiality and loyalty as an attorney and therefore were "illegal" and are entitled to no protection under the anti-SLAPP statute; (2) the anti-SLAPP statute does not apply to an action by a former client against an attorney for breach of professional duties; (3) the litigation privilege cannot protect an attorney from liability to a former client for breach of professional duties; (4) the trial court erred by considering arguments and evidence presented for the first time in Faigin's reply brief while denying FRC leave to file a supplemental opposition; and (5) if the order granting the special motion to strike is reversed, the order awarding attorney fees also must be reversed.

## DISCUSSION

### 1. *Special Motion to Strike*

■ A special motion to strike is a procedural remedy to dispose of lawsuits brought to chill the valid exercise of a party's constitutional right of petition or free speech. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].) The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).) The Legislature has declared that the statute must be "construed broadly" to that end. (*Ibid.*)

A cause of action is subject to a special motion to strike if the defendant shows that the cause of action arises from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue and the plaintiff fails to demonstrate a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) On appeal, we independently review both of these determinations. (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1345–1346 [63 Cal.Rptr.3d 798].)

■ An " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " is defined by statute to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) If the defendant shows that the cause of action arises from a statement described in clause (1) or (2) of section 425.16, subdivision (e), the defendant is not required to separately demonstrate that the statement was made in connection with a "public issue." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*).)

■ A cause of action is one "arising from" protected activity within the meaning of section 425.16, subdivision (b)(1) only if the defendant's act on which the cause of action is based was an act in furtherance of the

defendant's constitutional right of petition or free speech in connection with a public issue. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) Whether the "arising from" requirement is satisfied depends on the " 'gravamen or principal thrust' " of the claim. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 [87 Cal.Rptr.3d 275, 198 P.3d 66], quoting *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 193 [6 Cal.Rptr.3d 494].) A cause of action does not arise from protected activity for purposes of the anti-SLAPP statute if the protected activity is merely incidental to the cause of action. (*Martinez, supra,* at p. 188.) In deciding whether the "arising from" requirement is satisfied, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

■ A cause of action that arises from protected activity is subject to dismissal unless the plaintiff establishes a probability of prevailing on the claim. (§ 425.16, subd. (b)(1).) A plaintiff establishes a probability of prevailing on the claim by showing that the complaint is legally sufficient and supported by a prima facie showing of facts that, if proved at trial, would support a judgment in the plaintiff's favor. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713–714 [54 Cal.Rptr.3d 775, 151 P.3d 1185].) The court cannot weigh the evidence, but must determine as a matter of law whether the evidence is sufficient to support a judgment in the plaintiff's favor. (*Ibid.*) The court must consider not only facts supported by direct evidence, but also facts that reasonably can be inferred from the evidence. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 822 [124 Cal.Rptr.3d 256, 250 P.3d 1115] (*Oasis West*).) The defendant can defeat the plaintiff's evidentiary showing by presenting evidence that establishes as a matter of law that the plaintiff cannot prevail. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) The defendant cannot defeat the plaintiff's evidentiary showing, however, by presenting evidence that merely contradicts that evidence but does not establish as a matter of law that the plaintiff cannot prevail. (*Oasis West, supra,* at p. 820.)

### 2. *Each Count Arises from Protected Activity*

#### a. *The Counts for Breach of Confidence, Breach of Fiduciary Duty and Equitable Indemnity Arise from Protected Activity*

The counts for breach of confidence, breach of fiduciary duty, and equitable indemnity all are based on Faigin's statements made to the Commissioner that FRC and Fremont General were planning to auction artwork that purportedly belonged to Fremont Indemnity. FRC alleges that by making those statements Faigin breached his duty of confidence and other fiduciary

duties owed to FRC and Fremont General as former clients, and that FRC is entitled to equitable indemnity as a result. It seems clear that the gravamen or principal thrust of each of these counts is that Faigin breached his professional duties owed to his former clients by making the statements to the Commissioner.

Faigin's statements concerned the assets of an insolvent insurer, Fremont Indemnity. Faigin made those statements to the Commissioner as the court-appointed liquidator in the then pending liquidation proceeding, who was charged with marshaling the insolvent insurer's assets. A statement is "in connection with" an issue under consideration by a court in a judicial proceeding within the meaning of clause (2) of section 425.16, subdivision (e) if it relates to a substantive issue in the proceeding and is directed to a person having some interest in the proceeding. (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266 [73 Cal.Rptr.3d 383].) Faigin's statements made to the Commissioner satisfy this standard and therefore each of these three counts arises from protected activity under the anti-SLAPP statute. The authorities cited by FRC do not persuade us to the contrary, as we discuss below.

b. *The Count for Violation of Rule 3-310(C) Arises from Protected Activity*

Rule 3-310(C) prohibits an attorney from simultaneously representing clients with conflicting interests without obtaining their informed written consent. FRC alleges in its count for violation of rule 3-310(C) that Faigin acted as counsel for FRC at the direction of Fremont General. FRC alleges that it never consented to Faigin's dual representation of FRC and Fremont General, or any of Fremont General's subsidiaries. FRC also alleges that "[w]ith respect to Faigin advising the California Insurance Commissioner that his former clients were in the process of auctioning artworks that Faigin falsely asserted were owned by Fremont Indemnity Company . . . , the interests of [FRC] and Faigin's other clients were in conflict." FRC alleges further that the Commissioner commenced the adversary action against it as a result of Faigin's statements to the Commissioner and that FRC suffered damages as a result.

We regard this count as an attempt to cast the same conduct on which the other counts are based, Faigin's statements to the Commissioner, as a violation of rule 3-310(C). Although FRC alleges that Faigin violated rule 3-310(C) by simultaneously representing clients with conflicting interests, it alleges that it was damaged as a result of Faigin's statements to the Commissioner and that the interests of Faigin's former clients were in conflict with respect to those statements. As we view it, the gravamen of this

count is that Faigin violated rule 3-310(C) by simultaneously representing clients with conflicting interests without their informed written consent and by informing the Commissioner that his former clients were in the process of auctioning artworks purportedly belonging to Fremont Indemnity. Faigin's statements to the Commissioner were made in connection with an issue under consideration by a court in a judicial proceeding within the meaning of clause (2) of section 425.16, subdivision (e), as we have stated. We therefore conclude that the count for violation of rule 3-310(C) arises from protected activity under the anti-SLAPP statute.

### c. *Faigin's Conduct Was Not "Illegal as a Matter of Law"*

██ FRC contends Faigin's statements to the Commissioner violated his duties of confidentiality and loyalty owed to FRC as a former client, so his conduct was illegal and cannot be protected activity under the anti-SLAPP statute under the rule from *Flatley, supra,* 39 Cal.4th 299. The California Supreme Court in *Flatley* held that the anti-SLAPP statute does not protect speech or petitioning activity that is conclusively shown or conceded to be "illegal as a matter of law" and therefore not a valid exercise of the constitutional right of petition or free speech. (*Id.* at pp. 317, 320.) *Flatley* stated, "because not all speech or petition activity is constitutionally protected, not all speech or petition activity is protected by section 425.16. [Citation.]" (*Id.* at p. 313.) *Flatley* also stated, "a defendant whose assertedly protected speech or petitioning activity was illegal as a matter of law, and therefore unprotected by constitutional guarantees of free speech and petition, cannot use the anti-SLAPP statute to strike the plaintiff's complaint." (*Id.* at p. 305.)

The rule from *Flatley, supra,* 39 Cal.4th 299, concerns the first step of the two-step inquiry under the statute. A defendant moving to strike the plaintiff's complaint under the anti-SLAPP statute cannot show that the plaintiff's cause of action arises from an act in furtherance of the defendant's protected speech or petition rights if the evidence conclusively establishes as a matter of law, or the defendant concedes, the illegality of the defendant's conduct on which the cause of action is based. (*Id.* at pp. 316, 320.) If there is a factual dispute as to the illegality of the defendant's conduct, however, the court cannot conclude that the conduct was illegal as a matter of law and must proceed to the second step to determine whether the defendant has established a probability of prevailing. (*Id.* at p. 316.)

The parties dispute the meaning of the term "illegal" as used in *Flatley, supra,* 39 Cal.4th 299. The illegal conduct in *Flatley* was criminal extortion. (*Id.* at pp. 330, 332.) *Flatley* held that extortion was not a constitutionally protected form of speech and that the anti-SLAPP statute therefore did not

apply. (*Id.* at pp. 328, 333.) The prior authorities cited in *Flatley, supra,* 39 Cal.4th at page 313, holding that illegal conduct was not protected activity under the anti-SLAPP statute also involved criminal conduct. (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 851 [111 Cal.Rptr.2d 582] [criminal violence and other criminal acts]; *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1366–1367 [102 Cal.Rptr.2d 864], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5 [criminal laundering of political campaign money]; see also *Cohen v. Brown* (2009) 173 Cal.App.4th 302, 317–318 [93 Cal.Rptr.3d 24] [criminal extortion]; *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntington Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, 1296–1297 [50 Cal.Rptr.3d 27] [conspiracy to commit acts of harassment and vandalism, including criminal acts].)

Several Court of Appeal opinions have rejected attempts to apply the rule from *Flatley, supra,* 39 Cal.4th 299, to noncriminal conduct. *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654 [107 Cal.Rptr.3d 294], held that the rule from Flatley applies only to conduct that is criminally illegal, rather than merely in violation of a statute. *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 477, 480–481 [99 Cal.Rptr.3d 394], held that litigation conduct by attorneys allegedly in violation of statutes authorizing treble damages for assisting in the evasion of child support obligations was not "illegal" within the meaning of the rule from *Flatley.* *Cabral* stated that even if the attorneys' conduct violated the statutes, the conduct was "neither inherently criminal nor otherwise outside the scope of normal, routine legal services," and "this is not the kind of illegality involved in *Flatley v. Mauro, supra,* 39 Cal.4th 299, and *Paul for Council v. Hanyecz, supra,* 85 Cal.App.4th 1356." (*Id.* at p. 481, fn. omitted.) *G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 616 [110 Cal.Rptr.3d 559], followed *Cabral* in holding that an attorney's admitted failure to redact certain information from credit reports filed with the court in a dissolution action, in violation of rule 1.20 of the California Rules of Court, was not the type of criminal activity involved in *Flatley* and *Paul for Council* and therefore was not subject to the rule from *Flatley.* Similarly, *Price v. Operating Engineers Local Union No. 3* (2011) 195 Cal.App.4th 962, 971 [125 Cal.Rptr.3d 220], followed *Mendoza* in holding that defamatory speech was not "illegal" within the meaning of *Flatley.* (See also *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 390 [127 Cal.Rptr.3d 903].)

██ Consistent with these authorities, we hold that the rule from *Flatley, supra,* 39 Cal.4th 299, is limited to criminal conduct. Conduct in violation of an attorney's duties of confidentiality and loyalty to a former client cannot be "illegal as a matter of law" (*id.* at pp. 316, 320) within the meaning of *Flatley,* so the anti-SLAPP statute is not inapplicable on this basis.

### d. Cases Finding the Anti-SLAPP Statute Inapplicable in Actions by Clients Against Their Own Attorneys for Breach of Professional Duties Are Distinguishable

FRC contends the cross-complaint is an action by a client against an attorney for breach of professional duties and the anti-SLAPP statute categorically does not apply to such an action. FRC overstates the rule, and the cases finding the anti-SLAPP statute inapplicable in actions against attorneys for breach of professional duties are distinguishable.

Several cases have held that the anti-SLAPP statute was inapplicable in actions by clients against their own attorneys because the gravamen or principal thrust of the particular causes of action did not concern a statement made in connection with litigation, but instead concerned some other conduct allegedly constituting a breach of professional duty. (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1226–1227 [102 Cal.Rptr.3d 245] [simultaneous representation of clients with conflicting interests]; *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1274 [99 Cal.Rptr.3d 805] [inducing the plaintiff to agree to an unconscionable attorney fee]; *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1628 [90 Cal.Rptr.3d 669] [acceptance of representation adverse to the plaintiff]; *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 732 [64 Cal.Rptr.3d 867] [same]; see also *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1189 [20 Cal.Rptr.3d 621] [stating that the action arose from the acceptance of representation adverse to the plaintiff rather than the litigation conduct that followed].)[4] Thus, those courts concluded that any statements made in connection with the litigation were merely incidental to the causes of action. (*United States Fire Ins., supra*, 171 Cal.App.4th at p. 1628; *Freeman, supra*, 154 Cal.App.4th at p. 732; see *PrediWave, supra*, 179 Cal.App.4th at pp. 1226–1227 [implying the same]; *Benasra, supra*, 123 Cal.App.4th at p. 1189 [same].) These cases are distinguishable because the gravamen of FRC's counts for breach of confidence, breach of fiduciary duty, and equitable indemnity is that Faigin violated his professional duties owed to his former clients by making the statements to the Commissioner, rather than by some other conduct. Faigin's statements made to the Commissioner are not merely incidental to these causes of action. (See *Mindys Cosmetics, Inc. v. Dakar* (9th Cir. 2010) 611 F.3d 590, 597–598 [distinguishing this same line of cases on similar grounds].)

---

[4] *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 674–675 [35 Cal.Rptr.3d 31], in contrast, held that counts for legal malpractice and breach of fiduciary duty relating to the simultaneous representation of clients with conflicting interests were based in significant part on the defendant's petitioning activity in litigation and therefore arose from protected activity.

The same is true of the count for violation of rule 3-310(C). Although FRC alleges that Faigin violated rule 3-310(C) by simultaneously representing clients with conflicting interests, the alleged violation is based on Faigin's statements to the Commissioner, and the alleged injury arises exclusively from that event.[5] We conclude that this count is based on Faigin's statements to the Commissioner and that those statements are not merely incidental to the cause of action.

*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532 [52 Cal.Rptr.3d 712] (*Kolar*) stated more broadly than the cases cited above that the anti-SLAPP statute does not apply to a cause of action by a client against the client's own attorney based on litigation-related conduct undertaken on behalf of the client. (*Id.* at p. 1535.) *Kolar* explained that a " 'garden variety' " malpractice cause of action does not have a chilling effect on advocacy or any other petitioning activity (see § 425.16, subd. (a)), but instead encourages competent and zealous representation. (*Kolar, supra,* at pp. 1539–1540.) *Kolar* also stated that the client in a malpractice suit "is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so." (*Id.* at p. 1540.) *Kolar* concluded that a malpractice cause of action ordinarily does not arise from petitioning activity undertaken on behalf of the client, but instead arises from the attorney's failure to competently represent the client in engaging in that activity. (*Id.* at pp. 1539–1540.) Similarly, *PrediWave, supra,* 179 Cal.App.4th at page 1228, concluded in an alternative holding that the anti-SLAPP statute does not apply to "a client's causes of action against the client's own attorney arising from litigated-related activities undertaken for that client." *Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 578–579 [104 Cal.Rptr.3d 628], reached essentially the same conclusion.

*Kolar, supra,* 145 Cal.App.4th 1532, and the other cases holding that the anti-SLAPP statute does not apply to a cause of action by a client against the client's own attorney based on litigation-related conduct undertaken on behalf of the client are distinguishable. FRC does not allege that Faigin breached his professional duties in the course of representing FRC as a client in litigation. Faigin did not represent FRC in connection with the liquidation proceeding at the time of his statements to the Commissioner, and he was not acting on behalf of FRC in making those statements. Instead, FRC alleges that Faigin breached his professional duties owed to FRC as a former client by informing the Commissioner that FRC was going to auction artworks purportedly

---

[5] FRC acknowledges that "[e]ach of FRC's four causes of action is founded on Faigin's improper call to the [Commissioner]" and "the Third and Fourth Causes of Action are based on the same underlying conduct as the first two causes of action."

belonging to an insolvent insurer. The concerns expressed in *Kolar* and other cases regarding an attorney's representation of a client in litigation therefore are inapposite here.

Accordingly, FRC has not shown that the anti-SLAPP statute is inapplicable on these grounds.

3. *FRC Established a Probability of Prevailing on Its Counts for Breach of Confidence and Breach of Fiduciary Duty*

a. *The Litigation Privilege Is Inapplicable*

 A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim. (*Flatley, supra,* 39 Cal.4th at p. 323; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 972 [106 Cal.Rptr.3d 290].) Contrary to the trial court, however, we conclude that the litigation privilege is inapplicable.

 The litigation privilege precludes liability arising from a publication or broadcast made in a judicial proceeding or other official proceeding.[6] " 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 [63 Cal.Rptr.3d 398, 163 P.3d 89] (*Action Apartment*).)

"The purposes of section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation[.] [Citation.] To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice. [Citation.] Moreover, '[i]n furtherance of the public policy purposes it is designed to serve, the privilege prescribed by section 47[, subdivision (b)] has been given broad application.' [Citation.]" (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1063.)

---

[6] Civil Code section 47 states, in relevant part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows . . . ."

A prelitigation communication is privileged only if it "relates to litigation that is contemplated in good faith and under serious consideration." (*Action Apartment, supra,* 41 Cal.4th at p. 1251.) "Good faith" in this context refers to a good faith intention to file a lawsuit rather than a good faith belief in the truth of the communication. (*Ibid.*) The requirement of good faith contemplation and serious consideration provides some assurance that the communication has some " ' "connection or logical relation" ' " to a contemplated action and is made " ' "to achieve the objects" ' " of the litigation. (*Ibid.*)

The litigation privilege does not apply to malicious prosecution actions. (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405].) *Albertson* explained, "The policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." (*Ibid.*; accord, *Action Apartment, supra,* 41 Cal.4th at p. 1242.)

In *Mattco Forge, Inc. v. Arthur Young & Co.* (1992) 5 Cal.App.4th 392 [6 Cal.Rptr.2d 781], we held that the litigation privilege did not apply to an action against the plaintiff's own expert witness in prior litigation for professional malpractice, breach of contract, and other counts. (*Id.* at pp. 395–396.) We distinguished cases holding that the litigation privilege protected a party-affiliated expert witness from suit by an opposing party and cases involving neutral experts. (*Id.* at pp. 403–404.) We stated that applying the privilege to protect an expert witness from suit by the party who hired the expert would not promote free access to the courts or encourage witnesses to testify truthfully. (*Id.* at p. 404.) We noted, by analogy, that if the litigation privilege "protected an attorney from any suit by a former client, no malpractice suit could be brought." (*Id.* at p. 406.) We held that applying the litigation privilege to protect an expert witness from suit by the party who hired the expert would not further the policies underlying the privilege and that the privilege therefore was inapplicable. (*Ibid.*)

*Kolar, supra,* 145 Cal.App.4th 1532, similarly held that the litigation privilege did not apply to a legal malpractice action against the plaintiff's own attorney in prior litigation, stating, "We perceive no sound reason why litigators should be exempted from malpractice liability . . . ." (*Id.* at p. 1541.)

The litigation privilege, if applicable, would preclude essentially any action by a former client against an attorney for breach of professional duties arising from communicative conduct in litigation on behalf of that client. We believe that to allow litigation attorneys to breach their professional duties

owed to their own clients with impunity from civil liability would undermine the attorney-client relationship and would not further the policies of affording free access to the courts and encouraging open channels of communication and zealous advocacy. We therefore hold that the litigation privilege is inapplicable in an action by a former client against an attorney for breach of professional duties, so we cannot affirm the granting of the special motion to strike on this basis.

b. *The Evidence Establishes a Prima Facie Case*

 An attorney's fiduciary obligations to his or her client include the duties of loyalty and confidentiality. " '[T]he effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel. [Citation.] The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship.' (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146–1147 [86 Cal.Rptr.2d 816, 980 P.2d 371].) Accordingly, 'an attorney is forbidden to do either of two things after severing [the] relationship with a former client. [The attorney] may not do anything which will injuriously affect [the] former client in any matter in which [the attorney] formerly represented [the client] nor may [the attorney] at any time use against [the] former client knowledge or information acquired by virtue of the previous relationship.' (*Wutchumna Water Co.[ v. Bailey* (1932)] 216 Cal. [564,] 573–574 [15 P.2d 505]; see *People ex rel. Deukmejian v. Brown* (1981) 29 Cal.3d 150, 155 [172 Cal.Rptr. 478, 624 P.2d 1206] [quoting *Wutchumna Water Co.*]; *Brand v. 20th Century Ins. Co./21st Century Ins. Co.* (2004) 124 Cal.App.4th 594, 602 [21 Cal.Rptr.3d 380] [same].)" (*Oasis West, supra*, 51 Cal.4th at p. 821.)

 Contrary to Faigin's argument, the prohibition against acting in a manner that would injure a former client in any matter in which the attorney formerly represented the client is not limited to the situation where the attorney concurrently or successively represents another client with interests adverse to those of the former client. *Oasis West, supra*, 51 Cal.4th at page 822, expressly rejected the argument that this prohibition was so limited. *Oasis West* stated further that the duties of loyalty and confidentiality bar an attorney not only from using a former client's confidences in representing another client, but also from taking a former client's confidences significantly into account in acting in the attorney's own interest even if there is no second client and no confidences are disclosed. (*Id.* at pp. 822–823.)

 *Oasis West, supra*, 51 Cal.4th 811, involved an action by a real estate developer against an attorney who had represented the developer in an

effort to obtain a city's approval of a redevelopment project. Two years after terminating the representation, the attorney solicited signatures on a referendum petition to overturn the city's project approval. (*Id.* at pp. 816–817.) The California Supreme Court stated that the absence of direct evidence that the attorney relied on confidential information in assisting the campaign against the project was no obstacle to establishing a probability of prevailing because "the proper inquiry in the context of an anti-SLAPP motion 'is whether the plaintiff proffers sufficient evidence for such an inference.' [Citation.]" (*Id.* at p. 822.) The court concluded that in light of the undisputed facts that the attorney agreed to represent the developer in seeking project approvals, acquired confidential information in the course of that representation, and then decided to publicly oppose the same project, it was reasonable to infer that he relied on such confidential information in opposing the project. (*Ibid.*) *Oasis West* concluded that such an inference constituted a prima facie showing of a breach of duty as necessary to support the developer's causes of action for breach of fiduciary duty, professional negligence, and breach of contract. (*Id.* at pp. 820–822.)

The counts for breach of confidence and breach of fiduciary duty both are based on Faigin's statements made to the Commissioner that FRC and Fremont General were planning to auction artworks that purportedly belonged to Fremont Indemnity, as we have stated.[7] Faigin conceded in his moving papers that he made those statements.

 An attorney is presumed to acquire confidential information in the course of an attorney-client relationship. (*Oasis West, supra,* 51 Cal.4th at p. 821.) Faigin served as general counsel for Fremont General during part of the pendency of the liquidation proceeding and also provided legal services to FRC during the same time period. Faigin stated in his declaration that he was "staff counsel" for both Fremont General and FRC from the time that he was replaced as general counsel for Fremont General in November 2007 until his discharge in March 2008. The court in the liquidation proceeding had ordered all of Fremont Indemnity's affiliates to cooperate with the Commissioner in the performance of his duties and to turn over to the Commissioner all records of Fremont Indemnity's assets. Faigin stated in his declaration, "As in-house counsel for [Fremont General], I was aware of and bound by the terms of" that order. Although the extent to which Faigin represented or advised FRC in connection with its obligations under that order is not clear from the appellate record, we believe that the evidence that Faigin served as staff counsel for FRC and that he was aware of the terms of the order supports a reasonable inference that advising FRC with respect to compliance with its obligations to the Commissioner under the order was within the

---

[7] Faigin does not challenge and we need not address the evidence establishing a prima facie case with respect to the elements of each count apart from breach of duty.

scope of Faigin's representation of FRC. We presume that Faigin acquired confidential information in the course of that representation.

 In light of the presumption that Faigin acquired confidential information in his representation of FRC and the circumstances of Faigin's employment termination and subsequent telephone call to the Commissioner, we believe that it is reasonable to infer that he used or disclosed such confidential information in informing the Commissioner that FRC and Fremont General were planning to auction artworks purportedly belonging to Fremont Indemnity. Faigin's declaration to the contrary does not defeat this showing as a matter of law. We therefore hold that FRC established a probability of prevailing on its counts for breach of confidence and breach of fiduciary duty and that the striking of those counts was error.

### 4. The Striking of the Count for Violation of Rule 3-310(C) Was Proper

As we have already noted, rule 3-310(C) prohibits an attorney from simultaneously representing clients with conflicting interests without obtaining their informed written consent. FRC alleges in its count for violation of rule 3-310(C) that it never consented to Faigin's dual representation of FRC and Fremont General, or any of Fremont General's subsidiaries. FRC alleges that its interests were in conflict with those of Faigin's other clients "[w]ith respect to Faigin advising the California Insurance Commissioner that his former clients were in the process of auctioning artworks that Faigin falsely asserted were owned by Fremont Indemnity Company . . . ." FRC alleges further that the Commissioner commenced the adversary action against it as a result of Faigin's statements to the Commissioner and that FRC suffered damages as a result.

Thus, FRC alleges that FRC and Fremont General were Faigin's "former clients" at the time of Faigin's statements to the Commissioner. FRC also alleges elsewhere in its cross-complaint that Faigin made the statements to the Commissioner the day after the termination of his employment. Because Faigin did not represent FRC at the time he made the statements, there was no simultaneous representation involving FRC at that time, so there was no violation of rule 3-310(C) in connection with those statements. Accordingly, we hold that FRC failed to establish a probability of prevailing on this count and that it was properly stricken.

### 5. The Striking of the Equitable Indemnity Count Was Proper

 Equitable indemnity is an equitable doctrine that apportions responsibility among tortfeasors responsible for the same indivisible injury on a

comparative fault basis. (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 598 [146 Cal.Rptr. 182, 578 P.2d 899].) "[T]he equitable indemnity doctrine originated in the common sense proposition that when two individuals are responsible for a loss, but one of the two is more culpable than the other, it is only fair that the more culpable party should bear a greater share of the loss." (*Id.* at p. 593.) A right of equitable indemnity can arise only if the prospective indemnitor and indemnitee are mutually liable to another person for the same injury. (*BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 852 [14 Cal.Rptr.3d 721] (*BFGC*).)

FRC alleges in its equitable indemnity count that Faigin breached his fiduciary duties owed to FRC by causing the Commissioner to file an adversary action against FRC, and that FRC has been damaged as a result. FRC alleges that because Faigin has injured FRC in this manner, FRC is entitled to indemnity from Faigin if it is found liable to him on his complaint.

FRC does not allege and presented no evidence that FRC and Faigin are liable to another person for the same injury, so there is no basis for equitable indemnity. (*BFGC, supra*, 119 Cal.App.4th at p. 852.) Thus, FRC failed to establish a probability of prevailing on this count and we hold that it was properly stricken.[8]

### 6. *The Order Awarding Attorney Fees Must Be Reversed*

Our partial reversal of the order granting the special motion to strike compels the conclusion that the order awarding attorney fees also must be reversed. A defendant or cross-defendant is entitled to recover attorney fees and costs in connection with a partially successful anti-SLAPP motion unless the results obtained are insignificant and of no practical benefit to the moving party. (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 339–340 [42 Cal.Rptr.3d 607].) A court awarding fees to the moving party on a partially successful anti-SLAPP motion must exercise its discretion in determining the amount of fees and costs to award in light of the moving party's relative success in achieving its litigation objectives. (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 218–219 [129 Cal.Rptr.3d 433]; *Mann, supra*, at pp. 344–345.)

Faigin has succeeded in striking the counts for equitable indemnity and for violation of rule 3-310(C), but has not succeeded in striking the other counts. The trial court on remand must exercise its discretion in determining whether

---

[8] In affirming in part the granting of the special motion to strike, we do not rely on any of the evidence or argument presented to the trial court for the first time in Faigin's reply papers, so FRC's contention in this regard is moot.

Faigin is a prevailing cross-defendant and, if so, the appropriate amount of fees and costs to award. (*City of Industry v. City of Fillmore, supra*, 198 Cal.App.4th at p. 219.)

## DISPOSITION

The order granting the special motion to strike is affirmed as to the striking of the counts for violation of rule 3-310(C) and equitable indemnity and reversed as to the striking of the counts for breach of confidence and breach of fiduciary duty. The order awarding attorney fees is reversed with directions to the trial court to determine whether Faigin is entitled to an attorney fee award and the reasonable amount of any award. Each party must bear its own costs on appeal.

Kitching, J., and Aldrich, J., concurred.