Filed 9/17/25  Cardenas v. Robles CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MARY JANE CARDENAS, Individually and as Successor in Interest, etc. et al.,<br><br>Petitioners and Respondents,<br><br>v.<br><br>LYDIA HELEN ROBLES,<br><br>Appellant. | D085916<br><br><br>(Super. Ct. No. PROSB2300899) |

APPEAL from an order of the Superior Court of San Bernardino County, Damian G. Garcia, Judge.  Affirmed.

The DLJ Law Firm and Dorian L. Jackson for Appellant.

Alden Law Firm and Mathew Alden for Petitioners and Respondents.

The action underlying this appeal is a trust contest among two factions of the family of decedent Barbara M. Cervantez.[1]  In 2023 Barbara's daughters Rosemary Aguilar and Linda Cervantez (the Rosemary Faction) petitioned the superior court to invalidate a trust that had been created in Barbara's name.  The petition named their sister Mary Jane Cardenas and

---

[1]     Because some of the parties share the same last name, we refer to each of them by first name.  We do so for the sake of clarity, intending no disrespect.

two of the three people who had signed the trust instrument as witnesses—Mary Jane's daughter and granddaughter, Edie Marcela Cardenas and Eileen Yolanda Vargas—as respondents, and it accused the three of them of fraud and undue influence in the inception of the trust.

Mary Jane, Edie, and Eileen (the Mary Jane Faction) cross-petitioned against the third person who had signed the trust instrument as a witness—their niece/cousin, Lydia Robles—asserting claims for equitable indemnity, contribution, and declaratory relief.

In response, Lydia filed an anti-SLAPP special motion to strike the cross-petition based on section 425.16 of the Code of Civil Procedure[2] (the anti-SLAPP law).  The trial court denied the motion.

Lydia contends the denial of the motion was error.  We disagree.  Hence we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

## A. The Barbara M. Cervantez Living Trust

The trust at the heart of this action is the Barbara M. Cervantez Living Trust.  This instrument purports on its face to have been signed on September 4, 2007 by Barbara as grantor and initial trustee, by Edie, Eileen, and Lydia as witnesses, and by a notary public named Eliazar Aguilera.  The trust names Mary Jane as successor trustee and sole beneficiary, it lists four parcels of real property (the real estate holdings) as its corpus, and it states, immediately adjacent to the signatures of Edie, Eileen, and Lydia, that:

> "The grantor has signed this trust . . . and has declared or signified in our presence that it is . . . her revocable living trust, and in the presence of the grantor and each other we have hereunto subscribed our names this 4th day of September, 2007.  [¶] . . . [¶]  We, Eileen Yolanda Vargas, Lydia Helen Robles, and Edie Marcela Cardenas, . . . the

---

[2]    Statutory references are to the Code of Civil Procedure.

witnesses . . . whose names are signed to the attached and foregoing instrument[,] were sworn and declared to the undersigned [notary public Aguilera] that the grantor [Barbara] signed the instrument as . . . her revocable living trust and that each of the witnesses, in the presence of the grantor and each other, signed the trust as witnesses."

The trust was recorded in October of 2007.

## B.    The Petition

According to the petition, Barbara had minimal schooling, was illiterate, was unable to write, and was unable to properly manage her finances.  From 1999 (the year in which she was widowed) until her death in 2020, her finances and real estate holdings were managed by Mary Jane or by Mary Jane, Edie, and Eileen.

The petition's description of how the trust came into existence appears in a set of paragraphs in which Rosemary and Linda allege as follows:

> "On or around September 4, 2007, Mary Jane went to Lydia's house and stated that 'Grandma wants me to pick you up because we are going to go somewhere.'  Lydia inquired to determine what was happening, and Mary Jane merely stated 'just come on; she is waiting for us.'  Lydia reluctantly consented.  Mary Jane took Lydia [to] . . . a house that was converted into an office. . . .

> "When Lydia walked into the [office, Barbara] was there with Eileen . . . , Edie . . . and an older pale man.  When Lydia sat down, they asked her to sign a document.  The document was not explained to Lydia; rather, the older man merely directed Lydia to sign the document.  Under pressure, Lydia signed the document.  As soon as Lydia signed the document, Mary Jane, Eileen and Edie walked out of the room and left.  [Barbara] inquired as to the nature of the documents, asking if it was a will.  The older man indicated it was not a will and that additional documents were required.  No further explanation was provided.

3

"Lydia did not witness [Barbara], Eileen or Edie sign anything."[3]

According to the petition, the trust contradicted Barbara's intent inasmuch as she had "repeatedly represented to family members that she intended for [the] estate to be divided amongst her children equally." Nevertheless, 12 days after Barbara's death certificate was certified, Mary Jane conveyed the real estate holdings from the trust to herself.

The petition asserts eight causes of action against the Mary Jane Faction as follows: (1) presumption of fraud or undue influence; (2) undue influence; (3) duress, (4) fraud, (5) financial abuse of an elder adult; (6) cancellation of instruments; (7) quiet title; and (8) request for imposition of a constructive trust. On the basis of these causes of action, the petition seeks relief in various forms, including: cancellation of the trust and of certain deeds and other documents; a declaration that the trust and those deeds and other documents are void or voidable; a declaration that the conduct of Mary Jane, Edie, and Eileen in procuring the trust constituted elder abuse; a declaration that the real estate holdings are assets of Barbara's estate held in constructive trust for the estate; and an award of compensatory, statutory, and punitive damages along with attorneys' fees and costs. The petition does not allege any cause of action against Lydia.

---

[3] The petition also includes allegations and exhibits to the effect that grant deeds purporting to convey some or all of the real estate holdings to the trust ostensibly were signed by Barbara and notarized by Aguilera on September 4, 2007 (the same day that the trust ostensibly was signed), and allegations and exhibits to the effect that the notary journals Aguilera maintained included no entry corresponding to a signature of Barbara, Edie, Eileen, or Lydia during September 2007.

Appended to the petition are a verification signed by Rosemary and a verification signed by Linda. The petition is not verified by anyone else.

## C. The Cross-petition

The cross-petition of the Mary Jane Faction against Lydia contradicts the petition. It alleges that Mary Jane, Edie, Eileen, and Lydia "all traveled together" with Barbara to the office of Aguilera Tax Services on September 4, 2007, after Barbara had told Edie, Eileen, and Lydia "that they were coming with [her] in order to witness [her] execution of a living trust and related documents." After they arrived, they "all sat around a table where[ ] Eleazar Aguilera presented an unsigned declaration of trust entitled 'Barbara M. Cervantez Living Trust.'" "After review of the unsigned trust, Barbara executed [it] in the presence of [Mary Jane, Edie, Eileen, and Lydia]." Then, "one by one, [Edie, Eileen, and Lydia] executed the Trust as witnesses and in the presence of each other, Barbara and . . . Mary Jane."

The cross-petition asserts three causes of action against Lydia: equitable indemnity, contribution, and declaratory relief. In each of these causes of action, it "incorporate[s] the allegations contained in the petition." But it does so "for informational purposes only" and "without admitting the truth of any of [those] allegations."

## D. The Anti-SLAPP Special Motion to Strike the Cross-petition

As noted *ante*, Lydia filed an anti-SLAPP special motion to strike the cross-petition. In support of this motion, she filed a declaration of counsel tending to support the afore-mentioned allegations in the petition. In opposition to the motion, the Mary Jane Faction filed a declaration of counsel

5

that tended to support the afore-mentioned allegations in the cross-petition. The trial court heard and denied the motion.[4]

Lydia timely appealed.

## II. DISCUSSION

In addressing Lydia's claim of error, we begin with a brief discussion of the three causes of action—equitable indemnity, contribution, and declaratory relief—that the Mary Jane Faction asserted in the cross-petition.

### A. The Causes of Action Asserted in the Cross-petition: Equitable Indemnity, Contribution, and Declaratory Relief

Equitable indemnity and contribution are similar to one another in that each is a mechanism for shifting liability among wrongdoers who are liable to the same person for the same loss. (See *C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 700 (*Mooradian*) [discussing equitable indemnity]; *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1176–1177 (*Fremont*) [same]; *Coca-Cola Bottling Co. v. Lucky Stores, Inc.* (1992) 11 Cal.App.4th 1372, 1377–1381 (*Coca-Cola*) [discussing contribution and equitable indemnity].)

But the two causes of action differ from one another in certain respects.

For example, whereas equitable indemnity is a creature of *equity* that allows "responsibility among tortfeasors responsible for the same indivisible injury" to be "apportion[ed] . . . on a *comparative* fault basis" (*Fremont, supra*, 198 Cal.App.4th at pp. 1176–1177, italics added), "[c]ontribution . . . is a

---

4    Lydia contends "the trial court failed to rule on the anti-SLAPP motion as to Mary Jane"; however, this contention is incorrect. Although the court's analysis focused more on conduct of Edie and Eileen than on conduct of Mary Jane, its order denying the motion applied equally to each of the three members of the Mary Jane Faction.

creature of *statute* [that] distributes the loss *equally* among all tortfeasors." (*Coca-Cola, supra*, 11 Cal.App.4th at p. 1378, italics added, fn. omitted.)

Whereas the equitable indemnity cause of action enables a defendant " 'to bring in other tortfeasors who are allegedly responsible for plaintiff's action *through a cross-complaint* . . . for equitable indemnification' " (*Platt v. Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3rd 1439, 1444, italics added), a contribution cause of action "can come into existence *only after rendition of a judgment* declaring more than one defendant jointly liable to the plaintiff." (*Coca-Cola, supra*, 11 Cal.App.4th at p. 1378, italics added [contribution "requires a showing that one of several joint tortfeasor judgment debtors has paid more than a pro rata share of a judgment"]; see also § 875, subd. (c).)

In keeping with the differences described *ante*, the two causes of action have different elements. " ' "The elements of a cause of action for [equitable] indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is . . . equitably responsible." ' " (*Mooradian, supra*, 43 Cal.App.5th at p. 700.) By contrast, "[t]o establish entitlement to contribution, [the party seeking contribution is] required . . . to show that[:] (1) a money judgment ha[s] been rendered jointly against it and [the party against whom it seeks contribution] (§ 875, subd. (a))[;] and (2) [it has] discharged more than its pro rata share of that judgment." (*Coca-Cola, supra*, 11 Cal.App.4th at pp. 1377–1381; see also (§ 875, subd. (c).)

The third of the three causes of action asserted in the cross-petition— the one for declaratory relief—is (like equitable indemnity) a creature of equity. Although a cause of action for declaratory relief may be applied to a broad array of different circumstances, rather than to just matters pertaining

to allocating liability among joint wrongdoers, the declaratory relief cause of action as set forth in the cross-petition in the *present* action is similar to the causes of action for equitable indemnity and contribution in that its focus, too, is an allocation of liability among Mary Jane, Edie, Eileen, and Lydia.[5]

Having touched on the nature of the three causes of action asserted in the cross-petition, we now turn our attention to the anti-SLAPP law.

## B.    The Anti-SLAPP Law

In 1992 the Legislature enacted the anti-SLAPP law to help weed out, in early stages of litigation, unmeritorious causes of action brought primarily to chill plaintiffs' valid exercise of certain constitutional rights.  (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315; § 425.16, subd. (a).)  The mechanism the Legislature created to achieve this objective has since come to be known as an anti-SLAPP special motion to strike.  (*Sierra Club*, at p. 315.)

The filing of an anti-SLAPP special motion to strike triggers a two-step, burden-shifting process.  (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1021–1022 (*Geragos*).)  In step one, the movant must make a prima facie showing that a cause of action alleged in the complaint (or, in this instance, the cross-petition) "arises from" an act of that defendant that is "in furtherance of the [defendant's] right of petition or free speech under the

---

5       In the declaratory relief cause of action, the Mary Jane Faction alleges that the circumstances presented by the petition and cross-petition necessitate a "declaration of the respective rights, duties, obligations and liabilities of cross-petitioners and cross respondents, and each of them, for the damages claimed by petitioners and a declaration of the amount and/or various percentages of liability and a declaration of cross-respondents' responsibility to indemnify cross-petitioners for the sums that cross-petitioners may be compelled to pay and for which cross-respondents, and each of them, are determined responsible."

United States Constitution or the California Constitution in connection with a public issue" (protected activity). (§ 425.16, subd. (b)(1); see also *Geragos*, at pp. 1021–1022.) In step two, the plaintiff must establish "a probability that the plaintiff will prevail on the claims." (§ 425.16, subd. (b)(1); see also *Geragos*, at pp. 1021–1022.)

In reviewing the denial of an anti-SLAPP special motion to strike, we apply the de novo standard of review. (*Geragos, supra*, 88 Cal.App.5th at p. 1020.) So doing, we engage in the same two-step process that the trial court undertakes in assessing an anti-SLAPP motion. (*Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 282 (*Weeden*).)

## C. Application of Step One of the Anti-SLAPP Law to the Equitable Indemnity, Contribution, and Declaratory Relief Causes of Action Asserted in the Cross-petition

Commencing as we must with step one of the two-step process, we begin by making two observations. First, the anti-SLAPP law explicitly defines what kinds of activities qualify as protected activity within the meaning of step one. (See § 425.16, subds. (b), (e).) To satisfy the anti-SLAPP law's definition of a protected activity, an act must be any of these four things:

> "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Second, a "cause of action may be stricken ' "only if the [protected activity] *itself* is the wrong complained of." ' " (*Williams v. Doctors Medical Center of Modesto, Inc.* (2024) 100 Cal.App.5th 1117, 1130, quoting *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 and *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060; see also *Wong v. Wong* (2019) 43 Cal.App.5th 358, 364 [same].)

In support of her contention that the wrong that the Mary Jane Faction complains of in the cross-petition is conduct that qualifies as protected activity, Lydia argues "[t]he only fact that could possibly give rise to [the Mary Jane Faction]'s claims is the unstated allegation that [Lydia] should be held liable for allegedly repudiating her attestation, which concerns [her] testimony contained in the . . . petition." But we see two problems with this contention.

First, the petition does not contain any "testimony" of Lydia. Rather, it contains allegations that two individuals *other* than Lydia—i.e., Rosemary and Linda—have (through their verifications) adopted as *their* testimony.

Second, and more importantly, the causes of action pleaded in the cross-petition do not arise out of Lydia's *repudiation* of her attestation. Rather, they arise out of *the attestation itself*. For, as discussed *ante*, the thrust of all three of the causes of action asserted in the cross-petition is that, if Edie and Eileen are found to have falsely witnessed the signing of the trust, or perhaps if they or Mary Jane are found to have otherwise engaged in actionable conduct in connection with the inception of the trust, then Lydia should be required to share in responsibility for any damages flowing

10

therefrom because she likewise engaged in actionable conduct that resulted in the same harm.[6]

This conclusion necessarily flows from the nature of the causes of action pleaded in the cross-petition. As discussed *ante*, actions for equitable indemnity and contribution are a way to shift liability among wrongdoers who are liable to the same person for the same loss. Thus, the cross-petition against Lydia can only be read to assert that if any of the members of the Mary Jane Faction is found liable for their participation in fraud and deception against Barbara, then Lydia should share that liability, because she too participated in the fraud by her role in executing the allegedly false attestation.[7] It cannot be read to assert (as Lydia contends it asserts) that Lydia is liable for repudiating her attestation.

Lydia further argues that the trial court erred in concluding that "[t]he gravamen of the cross-petition is that if [the Mary Jane Faction] are found liable due to their actions as attesting witnesses to the trust . . . , then [Lydia] should be found liable and share in the damages for the same conduct as [the Mary Jane Faction]," contending that "this fact was never explicitly stated in the cross-petition" and therefore the court erred in "reading it in." But as

---

[6] Focusing on the conduct of Edie and Eileen, the trial court aptly described the cross-petition as taking the position "that, if . . . Eileen . . . and Edie . . . are found liable due to their actions as attesting witnesses to the trust . . . , then [Lydia] should be found liable and share in the damages for the same conduct as . . . Eileen and Edie."

[7] The cross-petition specifically alleges that "if [the Mary Jane Faction] are held liable to [the Rosemary Faction] under the Petition, then under the doctrine of indemnity for comparative contribution, [the Mary Jane Faction] are entitled to contribution and/or indemnification from [Lydia]. [Lydia] . . . should share liability with [the Mary Jane Faction for] . . . the total damages awarded to or received by [the Rosemary Faction] in the form of any compromise, settlement, award, judgment or otherwise."

11

discussed *ante*, this conclusion flows from the inherent nature of actions for equitable indemnity and contribution. The trial court did not err in its assessment.

Zeroing in then on the attestation itself, it is evident that Lydia's attestation does not qualify as a protected activity within the meaning of any of the four categories set forth in the definition we have quoted. That is to say, the attestation was not made (1) "before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," (2) "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law," or (3) "in a place open to the public or a public forum in connection with an issue of public interest." (See § 425.16, subd. (e)(1), (2), (3).) Nor does it qualify as (4) "other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id*., subd. (e)(4).)

Lydia relies on *Weeden, supra*, 70 Cal. App. 5th 269 to argue that an attestation is a protected activity for purposes of section 425.16, subdivision (e), because it is done "in connection with an issue under consideration or review by a legislative, executive, or judicial body." In *Weeden*, the court held that the recording of an abstract of judgment was a protected activity, because the act was undertaken in the course of enforcing a judgment. (*Weeden*, at p. 285, fn. 3.) Lydia cites to no authority for her argument, conceding that the issue "appears to be [one] of first impression." At least on

12

this record, we cannot say that the attestation of a trust in 2007 is a litigation-related activity as to litigation initiated in 2023.[8]

For the reasons set forth *ante*, we conclude Lydia has not carried her burden, at step one of the anti-SLAPP analysis, to show that a cause of action asserted in the cross-petition arises from protected activity. Thus we do not proceed to step two of the analysis. (*Mooradian, supra*, 43 Cal.App.5th at p. 698 ["If the moving party fails to demonstrate that any of the challenged claims for relief arise from protected activity, the court properly denies the motion to strike without addressing the second step (probability of success)"].)

## III. DISPOSITION

The order is affirmed. Mary Jane, Edie, and Eileen are entitled to costs on appeal.

KELETY, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.

---

[8]    In fact, it would seem that the point of many attestations is to avoid or minimize the possibility of litigation.