Filed 5/2/22  Richards v. Strang CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| ALICIA MARIE RICHARDS, | |
| Plaintiff and Appellant, | G059305 consol. w/ G059495 |
| v. | (Super. Ct. No. 30-2018-00986705) |
| PATRICIA STRANG et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from judgments of the Superior Court of Orange County, Glenn R. Salter, Judge.  Affirmed.  Motion for judicial notice granted.

Alicia Marie Richards in pro. per.

Law Offices of Randy K. Vogel and Randy K. Vogel for Defendants and Respondents.

Alicia Marie Richards and Ryal W. Richards have been embroiled in a long drawn-out and highly acrimonious dissolution action for several years.[1] Alicia has filed multiple unsuccessful appeals in connection with the couple's divorce judgment and Ryal's efforts to enforce it.[2] In April 2018, while some of her appeals were pending, Alicia filed a fraud action against Ryal. She later amended the complaint to add Ryal's mother, Patricia Strang, as well as Ryal's trial counsel in the dissolution action, Kevin Eugene Robinson. The trial court sustained Ryal's demurrer to the complaint without leave to amend. We affirmed the judgment dismissing Ryal in *Richards v. Richards* (May 2, 2022, G059675 [nonpub. opn.] (*Richards V.*).

This appeal challenges the trial court's decision to grant Strang's and Robinson's special motions to strike (anti-SLAPP motion) (Code Civ. Proc., § 425.16).[3] After the court dismissed Strang and Robinson from the case, Alicia filed two notices of appeal which were consolidated. Alicia's arguments attacking the court's jurisdiction to consider the anti-SLAPP motions, as well as her contentions regarding the court's rulings

---

[1] We will refer to the parties by their first names to avoid confusion.

[2] *In re Marriage of Richards* (Jan. 9, 2020, G055927) [nonpub. opn.] (*Richards I*) [affirmed order refusing to set aside a stipulated marital dissolution judgment ordering sale of the family residence]; *In re Marriage of Richards* (Jan. 9, 2020, G056626) [nonpub. opn.] (*Richards II*) [regarding postjudgment orders]; *In re Marriage of Richards* (May 18, 2020, G056921) [nonpub. opn.] (*Richards III*) [postjudgment orders regarding enforcement of judgment]; *In re Marriage of Richards* (Oct. 6, 2020, G057803) [nonpub. opn.] (*Richards IV*) [affirmed 2018 orders denying motions to quash/vacate Ryal's writ of possession].)
    We have also considered two tangentially related appeals arising from the dissolution action. In *Lavacot v. Richards* (Mar. 30, 2020, G056745) [nonpub. opn.], we considered Alicia's failed efforts to obtain money from her great-grandparents' trust to buy out Ryal's interest in the family residence. In *Zech v. Richards* (Mar. 8, 2022, G057798) [nonpub. opn.] (*Zech*), we determined the court had subject matter jurisdiction to adjudicate Alicia's former attorney's breach of contract/collection action.

[3] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

on the motions, lack merit. Accordingly, we affirm the judgments of dismissal entered in favor of Robinson and Strang.

BACKGROUND FACTS

We incorporate by reference the summary of facts outlined in *Richards I* concerning the dissolution action.[4] Relevant to this appeal, Alicia and Ryal were each represented by counsel in 2016 when Ryal filed a dissolution petition and moved out of the family residence (Property). (*Richards I,* G055927.) Ryal, claiming he could not afford to maintain the Property in addition to a separate residence, requested a hearing on selling the Property immediately. (*Ibid.*) He believed the Property's equity was approximately $800,000. (*Ibid.*) Alicia indicated she wanted to purchase the Property. (*Ibid.*) In 2017, Alicia and Ryal, with their counsel, appeared for a hearing and entered into a settlement agreement and stipulation for judgment. (*Ibid.*) The 11-page proposed judgment concerned many of the parties' disputes, including custody arrangements, credits, and support payments. With respect to the Property, the agreement provided Alicia with a July 7, 2017, deadline to obtain funds from a family trust to buy out Ryal's share, or alternatively a timeline and process for vacating and selling the residence if Alicia did not purchase the Property before July 7. (*Ibid.*)

All did not proceed as planned. Alicia was unable to buy out Ryal's share before the July deadline, and in September 2017, she filed a motion to vacate or set aside the stipulated judgment. (*Richards I, supra,* G055927.) Alicia asserted she was defrauded and coerced into signing the settlement. She added the stipulated judgment was the result of duress and described multiple incidents of perceived misconduct. Before the hearing, Alicia filed two more declarations raising additional allegations of fraud, concealment, duress, mistake, and inequity. (*Ibid.*) In January 2018, the court

---

4      We grant Alicia's motion for judicial notice of documents originally filed in Ryal and Alicia's dissolution case (Orange County Super. Ct. Case No. 15D009634), which also became part of the appellate record for *Richards I.*

considered the moving papers and oral argument before denying the motion.  (*Ibid.*)
Alicia appealed the ruling.

A few months later, on April 17, 2018, Alicia filed a lawsuit against Ryal
alleging causes of action for fraud, sexual misconduct, right of privacy, intentional
infliction of emotional distress, defamation of character, threats and spousal abuse,
breach of contract, "detriment," and breach of fiduciary duty.  Two months later, Alicia
amended the complaint to name Ryal's trial counsel a defendant in her action.  In October
2018, she added Ryal's mother as a defendant in her action.

Ryal filed a demurrer to the complaint, but before it could be heard the
court stayed the matter due to Alicia's appeal in the dissolution action and a new
bankruptcy proceeding.  Eventually the court lifted the stay, and in 2020 Alicia filed a
first amended complaint (FAC).

Alicia's FAC repeated some of the original causes of action, and added a
few new ones, as follows:  (1) fraud in fact and deceit; (2) negligent infliction of
emotional distress; (3) right of privacy; (4) intentional infliction of emotional distress;
(5) defamation of character; (6) threats and spousal abuse; (7) breach of contract and
covenants; (8) breach of fiduciary duty; and (9) rescission of contract for fraud.  Ryal
demurred to the FAC.  Robinson and Strang filed anti-SLAPP motions  The parties filed
multiple requests for judicial notice.

The court granted the anti-SLAPP motions.  It noted, "This is a marital
dissolution proceeding that has spilled over into the civil courts."  Applying the well-
settled two step analysis, the court determined Robinson met his burden on the first prong
by proving all the allegations against him relating to his zealous representation of Ryal in
the dissolution action.  It concluded, Alicia did not meet her burden of showing the
complaint against Robinson was legally sufficient to proceed to trial.

As for Strang, the court determined she met her burden on the first prong
because the allegations related to Strang's efforts to intervene in the dissolution action

4

and make false claims concerning property being litigated by the family law court. The court determined Alicia did not meet her burden on the second prong because it lacked the authority to reconsider allegations of fraud rejected by the family law court. The court awarded Robinson $5,564.95 and Strang $2,844.95 for attorney fees and costs. The court dismissed Robinson and Strang from the lawsuit.

DISCUSSION

I. *Self-Represented Litigants*

The trial court's orders are presumed to be correct. The appellant has the burden to prove otherwise by presenting legal authority and analysis on each point made, supported by appropriate citations to the material facts in the record. If the appellant does not meet this burden, the argument will be deemed forfeited. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 (*Ewald*) ["We repeatedly have held that the failure to provide legal authorities to support arguments forfeits contentions of error"].) These rules of appellate procedure apply to Alicia even though she is representing herself. (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638.) "When a litigant is appearing in propria persona, he [or she] is entitled to the same, but no greater, consideration than other litigants and attorneys [citations]." (*Ibid.*)

Alicia has the mistaken impression she is entitled to special treatment because she represented herself. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985 [self-representation not grounds for lenient treatment].) This is not intended to penalize self-represented litigants; instead, it is necessary to maintain stability in appellate proceedings, requiring adherence to the forms and procedures that govern appeals. This in turn supports the appellate court's independent and unbiased decision-making.

II. *Anti-SLAPP Applicable Law and Standard of Review*

Section 425.16 authorizes a special motion to strike claims arising from any act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16,

subd. (b)(1).)  The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance by allowing defendants "to request early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880.)

"Resolution of an anti-SLAPP motion involves two steps.  First, the defendant must establish that the challenged claim arises from activity protected by section 425.16, and if the defendant makes this showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.  [Citation.] On appeal, we review the trial court's ruling on the anti-SLAPP motion de novo. [Citation.]"  (*Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 311-312.)

III.  *First Step—Liability Arising from Protected Activity*

Section 425.16, subdivision (b)(1) (section 425.16(b)(1)), provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

"A claim arises from protected activity when that activity underlies or forms the basis for the claim.  [Citations.]"  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062-1063.)  "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability."  (*Id*. at p. 1063.)

"Consequently, '[i]n deciding whether the "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  (§ 425.16, subd. (b).)'  [Citation.] Thus, we are 'not limited to examining the allegations of the complaint alone but rather

6

consider[] the pleadings and the factual material submitted in connection with the special motion to strike.' [Citations.]" (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 111 ["The 'gravamen is defined by the *acts on which liability is based*, not some philosophical thrust or legal essence of the cause of action'"].)

Under section 425.16, subdivisions (e)(1) and (e)(2), respectively, protected activity includes "any written or oral statement or writing made before a . . . judicial proceeding," and "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." "Under the plain language of section 425.16, subdivisions (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding . . . are per se protected as petitioning activity by the anti-SLAPP statute. [Citations.]" (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479-480 (*Cabral*).) "Recognized petitioning activities . . . include not only the conduct of litigation but also acts and communications reasonably incident to litigation . . . ." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1025.)

A. *Robinson's Anti-SLAPP Motion*

Alicia claims the basis for liability was Robinson's role in conspiring with her ex-husband. She asserts that because Robinson's motive was financial, his role in the fraudulent scheme to deprive her of property, his perjury, and his theft, cannot be considered privileged activities.

Reviewing the matter de novo, we conclude the trial court did not err by deciding each of Alicia's claims against Robinson arose from activity protected under section 425.16, subdivisions (e)(1) and (e)(2). The gravamen of Alicia's complaint was primarily focused on Ryal's misconduct. Alicia's 34-page FAC refers to Robinson only five times, and each allegation related to his conduct as Ryal's counsel in the dissolution action. The five references are as follows:

7

(1) "Kevin E. Robinson (hereinafter "Robinson") is currently [Ryal's] attorney in fact and his actions in this matter were conducted with malice *within the course and scope of this representation thereof* and as approved and/or ratified by [Ryal] with the advanced knowledge of his conduct." (Italics added.)

(2) "[Ryal engaged in misconduct] to support his claim that Plaintiff was a hoarder and had psychological problems putting her in false light in the family law court and in the Newport Beach community and these false claims were being subordinated by *Robinson who claimed a special relationship with the [f]amily [l]aw [c]ourt [j]udge.* It was not until July, 2017 that Plaintiff began to put the pieces together proving that it was Defendants . . . who conspired together as part of their scheme to libel, slander, and discredit Plaintiff *in the [f]amily [l]aw proceedings* and in the Newport Beach community where Plaintiff resides as part of their scheme to take Plaintiffs real and community property by fraud, deceit, and misrepresentation knowing that these claims were false and misleading, causing Plaintiff extreme emotional distress, humiliation, and fear for the safety of her children and herself." (Italics added.)

(3) "Plaintiff was ignorant that on October, 17, 2016, when [Ryal] and *Robinson filed an emergency hearing* to sell the family residence stating that [Ryal] cannot afford to pay for two households despite the fact he was earning in excess of $10,000.00 a month . . . [Ryal] then purposely put the family home into foreclosure by intentionally defaulting on the mortgages as part of Defendants' scheme to force a fire sale knowing that Plaintiff was trying to obtain her father's trust to keep the family home for the benefit of the children." (Italics added.)

(4) "Plaintiff was ignorant that on March 28, 2017, that as part of the scheme to defraud Plaintiff, Strang was represented by the same person that was present when [Ryal] was vacating the family residence on February 20, 2016, both [Ryal] and Robinson perjured themselves when they lied by claiming they had no knowledge that Strang was going to assert a 25 [percent] ownership in the family residence.

8

(5) "[Ryal lied about his ability to] make the monthly debt payments so as to force the sale of the family home . . . . This falsehood was subordinated by Robinson who knew of [Ryal's] income and had the fiduciary duty to state the truth."

Each of these allegations arose from protected activity. The first statement, made as part of Alicia's introduction of Robinson, is the most telling. She admits her claims regarding Robinson relate to his actions during the "course and scope" of his representation of his client Ryal. "[A]ll communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding . . . are per se protected as petitioning activity by the anti-SLAPP statute. [Citations.]" (*Cabral, supra,* 177 Cal.App.4th at pp. 479-480.) The remaining allegations refer to Robinson's disclosure and nondisclosure of specific information about Alicia's reputation and Ryal's financial status while litigating the dissolution action on Ryal's behalf. These statements or omissions were protected under section 425.15, subdivision (e)(2), because they were made in connection with an issue under consideration by the family court, i.e., the classification and division of the spouses' property. Similarly, Robinson's statements to the trial court and motions qualified as statements or omissions before a judicial proceeding, which were protected under section 425.16, subdivision (e)(1).

Alicia suggests Robinson's conduct was not protected because he engaged in intentionally criminal activity. We appreciate that all categories of protected activity are subject to an exception, established in *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*), for conduct illegal as a matter of law. (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 423.) But our Supreme Court has emphasized the narrow scope of this exception: "We made it clear in *Flatley* that conduct must be illegal *as a matter of law* to defeat a defendant's showing of protected activity. The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an anti-SLAPP motion at the first step. [Citation.]" (*Id.* at p. 424.) Here, the *Flatley* exception is inapplicable because Robinson has not conceded he engaged in illegal

9

activity, and Alicia produced no evidence conclusively establishing that he did.  Indeed, she does not mention the *Flatley* exception in her briefing or supply any legal analysis on why we should deem Robinson's conduct illegal as a matter of law.  (See e.g., *Flatley, supra,* 39 Cal.4th at pp. 328-333 [defendant's undisputed letter and telephone calls constituted extortion as matter of law]; *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 700, 705-706 [defendant did not dispute police report was false, as established by finding of factual innocence in criminal case prompted by report]; *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 767, 770 [defendant pled guilty to federal bribery offense of corruptly giving cash payments to local government agent].)

Alicia suggests she should have been given the opportunity to amend her complaint to remove the sentence stating Robinson was acting in the scope of his representation in the dissolution action.  She claims it "was mistakenly put in paragraph 5 [of the FAC]."  It is well settled law that this type of amendment is not permitted.  "Once the trial court has determined the speech at issue is constitutionally protected, it may not grant leave to amend to omit facts to take the claim out of the protection of section 425.16.  [Citation.]  Allowing an amendment 'once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy.  Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading.'  [Citation.]"  (*Mobile Medical Services etc. v. Rajaram* (2015) 241 Cal.App.4th 164, 171.)

B.  *Strang's Anti-SLAPP Motion*

Alicia's claims against Strang in the FAC are more difficult to decipher.  We found only two allegations that specifically mention Strang:

(1) "Plaintiff was unaware that on March 24, 2017, that as part of Defendants' intentional scheme, Strang *filed a joinder in the [f]amily [l]aw [c]ourt*

10

claiming a 25 [percent] ownership of the family house misrepresenting facts and knowing them to be untrue specifically because Strang was paid off and deeded off eleven years previously.  Plaintiff was ignorant that on March 28, 2017[,] that as part of the scheme to defraud Plaintiff, Strang was represented by the same person that was present when [Ryal] was vacating the family residence on February 20, 2016, both [Ryal] and Robinson perjured themselves when they lied by claiming they had no knowledge that Strang was going to assert a 25 [percent] ownership in the family residence."  (Italics added.)

(2) "Defendants' assertion of fraudulent 25 [percent] ownership in the family home by [Strang] in the attempt to scam Plaintiff despite the fact [Strang] was paid off [11] years before and was not on the deed.  Defendants' also *make a fraudulent inheritance claim* on behalf of [Ryal] and Strang that had no merit but ran up huge attorney fees and costs to Plaintiff in the [f]amily [l]aw [c]ourt knowing that these claims were false . . . ."  (Italics added.)

These allegations both clearly relate to Strang's efforts to litigate her interest in the Property, which was the primary subject of the dissolution action.  We are uncertain why Alicia mentioned Strang's counsel was present when Ryal moved out of the Property.  At best, it provides background information about Strang's early and ongoing interest in the Property.  In any event, we conclude the trial court correctly determined Strang met her burden of proving the allegations all arise from her petitioning efforts to intervene in the dissolution action.  Certainly, Strang's motion to intervene was protected activity.  (§ 425.16, subd. (e)(1).)  The motion was a writing made in the dissolution action and directly concerned the persons who had an interest in that proceeding.  (See *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1055 [act of filing complaint and e-mail of litigation update protected activity].)  Strang's purported fraudulent statements relating to the Property during the dissolution proceedings was protected activity because they were made in connection with issues

11

currently under review. "'A statement is "in connection with" an issue under consideration by a court in a judicial proceeding within the meaning of clause (2) of section 425.16, subdivision (e) if it *relates to* a substantive issue in the proceeding and is directed to a person having some interest in the proceeding. [Citation.]' [Citation.]" (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 779.)

IV. *Second Step—Probability of Prevailing*

Having concluded Alicia's allegations against Robinson and Strang arose from protected activity, we turn our attention to the second prong of the anti-SLAPP analysis, i.e., has Alicia demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1).) To meet this prong, Alicia had the burden of establishing that the elements of the challenged claim are "'supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the [party opposing the motion] is credited.' [Citation.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

In making this showing, Alicia cannot rely solely on the allegations in the complaint, but must present evidence that would be admissible at trial. (*Alpha & Omega Development, LP v. Whillock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 664.) Regardless of who bears the burden of proof regarding affirmative defenses, the court must determine whether a plaintiff can establish a prima facie case of prevailing, or whether a defendant has defeated a plaintiff's evidence as a matter of law. (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 683.)

A. *Lack of Subject Matter Jurisdiction Defeats Claims Against Strang*

The court determined Alicia did not meet her burden on the second prong because it lacked the authority to reconsider allegations of fraud rejected by the family law court. We agree, for the same reason we affirmed the trial court's ruling sustaining Ryal's demurrer in *Richards V., supra,* G059675. Simply stated, the trial court lacked

12

subject matter jurisdiction to adjudicate the merits of the same claims that were central to the dissolution proceedings.

We incorporate by reference our discussion in *Richards V, supra,* G059675, of the applicable legal authority regarding subject matter jurisdiction. In that appeal, Alicia agreed with the trial court's conclusion it lacked subject matter jurisdiction to consider her claims against Ryal because the family law court had priority of jurisdiction over those disputes. Similarly, in this appeal, Alicia concedes the trial court lacked jurisdiction to consider her claims against Strang, and asserts the court should have transferred her claims "back to the family law court." She is right. The family law court had priority of jurisdiction over issues that were part of the dissolution proceedings, which included the ownership interests in the Property.

As in *Richards V.* G059675, Alicia is under the mistaken impression the court lacked authority to dismiss the case and should have instead transferred the matter to a family law judge. We explained in *Richards V.,* that a trial court must address subject matter jurisdiction as a threshold matter because a court lacking jurisdiction has no authority to adjudicate the merits of the dispute. (*Lefebvre v. Southern California Edison* (2016) 244 Cal.App.4th 143, 152.) Alicia apparently overlooked the body of case law holding a trial court can grant an anti-SLAPP motion based on lack of subject matter jurisdiction. Indeed, our Supreme Court addressed this issue and stated the following: "[A] court that lacks the power to answer one type of question in a case may nonetheless have the power to answer another type of question. It is, for example, a truism that '[a] court has jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and it must have authority to decide that question in the first instance.' [Citations.] Lack of subject matter jurisdiction is no bar to determining that a plaintiff has failed to establish a probability of prevailing on her claim because of lack of subject matter jurisdiction." (*Barry v. State Bar of California* (2017)

13

2 Cal.5th 318, 326 (*Barry*) [lack of subject matter jurisdiction is proper basis to determine plaintiff met second prong to defeat anti-SLAPP motion].)

We accept Alicia's concession the trial court lacked subject matter jurisdiction over her claims of misconduct regarding Strang. All of Alicia's allegations against Strang related to issues central to the family court proceedings, including Strang's efforts to intervene in the dissolution action. "[R]uling on an anti-SLAPP motion does not necessarily require a ruling on the merits of the plaintiff's claims; it may instead involve a determination that the plaintiff has no probability of prevailing because the court lacks the power to entertain the claims in the first place." (*Barry, supra,* 2 Cal.5th at p. 326.) Such was the case here. The court correctly determined Alicia had no probability of prevailing on her claims against Strang because it lacked subject matter jurisdiction to adjudicate those claims.

We incorporate by reference our discussion in *Richards V., supra,* G059675, of Alicia's assertion the trial court had a sua sponte duty to transfer her case back to the family law court. Simply stated, there is no case authority to support Alicia's theory on this issue.

B. *Litigation Privilege Defeats Claims Against Robinson*

Robinson maintained, and the trial court agreed, Alicia did not meet her burden on this step because the conduct and statements at issue were protected by the litigation privilege. We agree. "A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim. [Citation.]" (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1172 (*Fremont*).)

"The litigation privilege precludes liability arising from a publication or broadcast made in a judicial proceeding or other official proceeding. '"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation

14

to the action." [Citation.] The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." [Citation.]' [Citation.] [¶] 'The purposes of section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation. [Citation.] To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice. [Citation.] Moreover, "[i]n furtherance of the public policy purposes it is designed to serve, the privilege prescribed by section 47[, subdivision (b)] has been given broad application." [Citation.]' [Citation.]" (*Fremont, supra,* 198 Cal.App.4th at p. 1172, fn. omitted.) The privilege is not limited to statements made during trial or other proceedings, "but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057. (*Rusheen*).)

The heart of Alicia's complaint against Robinson is that he helped Ryal procure a stipulated judgment, he misrepresented facts to the court while advocating for his client, he claimed to have a special relationship with the family law judge considering the case, and he participated in legal proceedings on behalf of Ryal that injured her reputation in her community. Robinson's conduct and statements, made while zealously advocating for his client before and during the dissolution action, was conduct protected by the litigation privilege. This absolute privilege bars all torts other than malicious prosecution. (*Rusheen, supra,* 37 Cal.4th at p. 1057.)

Alicia's attempt to distance some of Robinson's conduct from the litigation is unavailing. She claims the gravamen of all her causes of action relate to a conspiracy scheme between all the defendants to steal property and defraud her. A similar claim was considered and rejected by the court in *Kenne v. Stennis* (2014) 230 Cal.App.4th 953. In that case, the trial court denied defendants' anti-SLAPP motion on the plaintiff's first

15

cause of action for conspiracy. The court reversed, explaining, "Conspiracy is not a cause of action. It is a theory of liability under which persons who, although they do not actually commit a tort themselves, share with the tortfeasor or tortfeasors a common plan or design in its perpetration. One who participates in a civil conspiracy, in effect, becomes liable for the torts of the coconspirators. But the conspiracy does not result in tort liability unless an actual tort is committed. [Citation.] As the Supreme Court explained, "'A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage.'" [Citations.] 'A bare agreement among two or more persons to harm a third person cannot injure the latter unless and until acts are actually performed pursuant to the agreement. Therefore, it is the acts done and not the conspiracy to do them which should be regarded as the essence of the civil action.' [Citation.] [Citation.]" (*Id*. at p. 968.)

Here, Alicia's fraud action was "a family law OSC with civil headings." (*Neal v. Superior Court* (2001) 90 Cal.App.4th 22, 25.) Due to the lack of subject matter jurisdiction, Alicia cannot claim she would have prevailed on any of the underlying tort claims upon which the conspiracy claim was based. Alicia also cannot show she had a probability of prevailing because the trial court properly dismissed Robinson's alleged coconspirators, Ryal and Strang, after concluding events in family law litigation cannot be reframed as torts. We conclude the court correctly granted Robinson's and Strang's anti-SLAPP motions.

V. *Allegations Regarding the Family Law Trial Judge*

Alicia maintains we must reverse the judgment because she was "prejudiced by the family law court judge misleading her into filing her claims in the civil court." She suggests the family law court convinced her to file her civil action to avoid fully litigating her disputes, knowing that the civil court lacked subject matter jurisdiction to consider the issues. We found nothing in the record to support this claim. The record shows Alicia asked the family law court to postpone sale of the Property

16

because she *intended to file* a civil action against Ryal. The court stated a civil action was not good cause to defer the sale. Alicia does not explain how this statement mislead her. We found nothing in the record suggesting the court encouraged Alicia to file a fraud action.

We understand Alicia believes she has not had her day in court to fully litigate her claims against Ryal, Robinson, and Strang. In her briefing, she repeatedly asserts she was not seeking to *relitigate* her claims in the civil court because the family law court stopped her from litigating these disputes during the dissolution proceedings. These, and other disparaging remarks regarding the family law court, do not belong in this appeal. Our review is limited to the rulings and proceedings transpiring before the trial judge in the civil court, i.e., Robinson and Strang's anti-SLAPP motions. Moreover, because we are familiar with the basis for Alicia's many appeals challenging the family law court's rulings, we do not appreciate her fabricated complaints about being unfairly denied the opportunity to litigate her disputes.

## DISPOSITION

The judgments are affirmed. We grant appellant's motion for judicial notice. Respondents shall recover their costs on appeal.

O'LEARY, P. J.

WE CONCUR:

GOETHALS, J.

MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17