Filed 12/24/24  Murray v. Leonard Roofing CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LEWIS MURRAY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LEONARD ROOFING, INC.<br><br>    Defendant and Respondent. | D083418<br><br><br><br><br><br>(Super. Ct. No. CVSW2303248) |

APPEAL from a judgment of the Superior Court of Riverside County, Angel M. Bermudez, Judge.  Affirmed.

DEN Labor Law and Daniel E. Nomanim; and Joseph S. Socher for Plaintiff and Appellant.

Liedle & Larson, Eric J. Larson, and Jeffrey M. Bennion for Defendant and Respondent.

Lewis Murray sued Leonard Roofing, Inc. (LRI), alleging its termination of his employment had been motivated by his complaints of sexual harassment.  LRI cross-complained, asserting causes of action for equitable indemnity and contribution against Murray.  In response, Murray filed an anti-SLAPP special motion to strike the cross-complaint pursuant to section 425.16 of the Code of Civil Procedure (the anti-SLAPP law or anti-

SLAPP statute).[1]  The trial court denied the motion, and Murray contends this was error.  We disagree with Murray.  Hence we affirm.

## I.
## Background

### A.    The Allegations in the Complaint and Cross-complaint[2]

According to allegations in the complaint, Murray began working at LRI in or about October 2021.  A year later, two female colleagues "began making sexually harassing comments . . . , including asking to see pictures of [Murray's] penis, despite [his] protesting the behavior."  Not long after, "one of those same co-workers . . . hit [Murray] in the buttocks without his consent."  When Murray complained to LRI, the company did not take appropriate action.  Instead it required him to complete a sexual harassment prevention course and then terminated his employment.  Thereafter Murray sued LRI, claiming retaliatory discharge.[3]

In response to Murray's complaint, LRI filed an answer and cross-complaint in which it denied the allegations of the complaint and asserted two causes of action—one for equitable indemnity and one for contribution—against Murray and several unnamed Roe cross-defendants.  According to the allegations of the cross-complaint, Murray and the Roe cross-defendants had

---

[1]    All unspecified statutory references are to the Code of Civil Procedure.  SLAPP is an acronym for a strategic lawsuit against public participation.

[2]    Each statement in section I(A) of this opinion is drawn from the pleadings.  We express no view as to the accuracy of any such statement.

[3]    The retaliation claims were based on Government Code section 12940 and Labor Code section 1102.5.  They were accompanied by a claim that LRI had failed to make Murray's personnel file and payroll records available for inspection, in violation of Labor Code sections 226 and 1198.5.  These claims were asserted against LRI and several unnamed Doe defendants.

"participated in ongoing sexual banter, off color joking, and other activities with co-employees that, if known by [LRI], would have resulted in [Murray's] termination." Murray not only participated in, but "was the instigator of . . . these activities despite knowing . . . they were inappropriate and likely hostile, intimidating, offensive and abusive towards co-employees."

## B. The Anti-SLAPP Special Motion to Strike the Cross-complaint

Murray filed an anti-SLAPP special motion to strike the cross-complaint. In support of the motion, he submitted several discovery responses and an e-mail tending to support the aforementioned allegations in his complaint. In opposition to the motion, LRI submitted several declarations that tended to support the aforementioned allegations in its cross-complaint[4] (and some of the allegations in the complaint). The trial court heard and denied the motion, and Murray timely appealed.

## II.
## Discussion

We begin with a brief introduction to the two causes of action—equitable indemnity and contribution—that LRI has asserted in the cross-complaint.

## A. The Causes of Action Asserted in the Cross-complaint: Equitable Indemnity and Contribution

Equitable indemnity and contribution are similar to one another in that each cause of action is a mechanism for shifting liability among wrongdoers who are liable to the same person for the same loss. (See *C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 700 (*Mooradian*)

---

[4] The declarations described Murray as rude, verbally abusive, abrasive, confrontational, difficult to work with, not complying with instructions, having a bad temper, and not being punctual. They further described him as having participated in sexual banter, albeit not as an instigator.

3

[discussing equitable indemnity]; *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1176–1177 (*Fremont*) [same]; *Coca-Cola Bottling Co. v. Lucky Stores, Inc.* (1992) 11 Cal.App.4th 1372, 1377-1381 (*Coca-Cola*) [discussing contribution and equitable indemnity].)

But the two causes of action differ from one another in certain respects.

For example, whereas equitable indemnity is a creature of *equity* that allows "responsibility among tortfeasors responsible for the same indivisible injury" to be "apportion[ed] . . . on a *comparative* fault basis" (*Fremont, supra,* 198 Cal.App.4th at pp. 1176–1177, italics added), "[c]ontribution . . . is a creature of *statute* [that] distributes the loss *equally* among all tortfeasors." (*Coca-Cola, supra,* 11 Cal.App.4th 1372, 1378.)

Whereas the equitable indemnity cause of action enables a defendant " 'to bring in other tortfeasors who are allegedly responsible for plaintiff's action *through a cross-complaint* . . . for equitable indemnification' " (*Platt v. Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3rd 1439, 1444, italics added), a contribution cause of action "can come into existence *only after rendition of a judgment* declaring more than one defendant jointly liable to the plaintiff." (*Coca-Cola, supra,* 11 Cal.App.4th 1372, 1378, italics added [contribution "requires a showing that one of several joint tortfeasor judgment debtors has paid more than a pro rata share of a judgment"];" (*ibid.*; see also § 875, subd. (c).)

In keeping with the differences described above, the two causes of action have different elements. " ' "The elements of a cause of action for [equitable] indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is . . . equitably responsible." ' " (*Mooradian, supra,* 43 Cal.App.5th at p. 700.) By contrast, "[t]o establish entitlement to contribution, [the party seeking

4

contribution is] required . . . to show that: (1) a money judgment ha[s] been rendered jointly against it and [the party against whom it seeks contribution] (§ 875, subd. (a)), and (2) [it has] discharged more than its pro rata share of that judgment (§ 875, subd. (c).)" (*Coca-Cola, supra,* 11 Cal.App.4th at p. 1380.)

Having touched on the nature of the two causes of action asserted in the cross-complaint, we now turn our attention to the anti-SLAPP law.

## B.    The Anti-SLAPP Law

In 1992 the Legislature enacted the anti-SLAPP law to help weed out, in early stages of litigation, unmeritorious causes of action brought primarily to chill plaintiffs' valid exercise of certain constitutional rights. (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315; § 425.16, subd. (a).)  The mechanism the Legislature created to achieve this objective has since come to be known as an anti-SLAPP special motion to strike. (*Club Members*, at p. 315.)

The filing of an anti-SLAPP special motion to strike triggers a two-step, burden-shifting process. (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1021–1022 (*Geragos*).)  First, the defendant must make a prima facie showing that a cause of action alleged in the complaint "arises from" an act of that defendant that is "in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California constitution in connection with a public issue" (protected activity). (§ 425.16, subd. (b)(1); see also *Geragos,* at pp. 1021–1022.)  Second, if the defendant succeeds in carrying this burden, then the plaintiff must establish "a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); see also *Geragos,* at pp. 1021–1022.)

"If the moving party fails to demonstrate that any of the challenged claims for relief arise from protected activity, the court properly denies the

5

motion to strike without addressing the second step (probability of success)." (*Mooradian, supra,* 43 Cal.App.5th at p. 698.)

## C. Application of the Anti-SLAPP Law to the Equitable Indemnity and Contribution Causes of Action Asserted in the Cross-complaint

In reviewing the denial of an anti-SLAPP special motion to strike, we apply the de novo standard of review. (*Geragos, supra,* 88 Cal.App.5th at p. 1020.)

### 1. Principles Guiding the Step-One Analysis

Commencing as we must with step one of the process discussed *ante,* we begin by noting that "a claim or cause of action arises from protected activity when it is based on or rests on protected activity." (*Williams v. Doctors Medical Center of Modesto, Inc.* (2024) 100 Cal.App.5th 1117, 1130 (*Williams*), citing *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*); see also *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062 (*Park*) [a "claim arises from protected activity when that activity underlies or forms the basis for the claim"].)

In attempting to explain this statement of "the often-elusive first step" (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 594), courts have articulated a variety of principles, sometimes in combination and at other times in isolation. One such principle is that "a claim or cause of action may be stricken ' "only if the [protected activity] *itself* is the wrong complained of." ' " (*Williams, supra,* 100 Cal.App.5th at p. 1130, quoting *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*) and *Park, supra,* 2 Cal.5th at p. 1060; see also *Wong v. Wong* (2019) 43 Cal.App.5th 358, 364 [same].) A second such principle is that the proponent of an anti-SLAPP special motion to strike "must . . . demonstrate that its protected conduct supplies one or more elements of [its adversary's] claim."

6

(*Williams,* at p. 1131, citing *Wilson, supra,* 7 Cal.5th at p. 887.) A third such principle is that "[a]llegations that are ' "merely incidental," ' or ' "collateral," ' or that merely provide context without actually supporting a claim for recovery are not subject to being stricken through the anti-SLAPP [law]." (*Williams,* at p. 1131, quoting in part *Baral v. Schmitt* (2016) 1 Cal.5th 376, 394 (*Baral*).)

Superimposed over these principles is our Supreme Court's mandate in its "procedurally . . . watershed decision" of *Baral* (*Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63, 100, fn. 15), that: "For causes of action that are based on multiple acts, some of which constitute protected activity and some of which do not, i.e., a ' " 'mixed cause of action,' " ' courts disregard acts that do not constitute protected activity." (*Williams,* at p. 1131, quoting in part *Bonni, supra,* 11 Cal.5th at p. 1010 and *Baral, supra,* 1 Cal.5th at p. 396.)

Thus we are guided to the question, as to each of the two causes of action pleaded in the cross-complaint (the one for equitable indemnity and the one for contribution): Is a protected activity among the things from which the cause of action may properly be said to "arise" within the meaning of the case law interpreting the anti-SLAPP law?

**2. Application of Principles Guiding the Step-One Analysis**

Examining the record in this case,[5] it is evident that each of the two causes of action pleaded in the cross-complaint—the cause of action for equitable indemnity and the cause of action for contribution—arises at least in part from activity that is *not* protected under the SLAPP law. This is because the *workplace behavior* that the cross-complaint attributes to Murray cannot reasonably be said to qualify as "act[s] . . . in furtherance of [Murray's] right of petition or free speech under the United States Constitution or the California constitution in connection with a public issue." (§ 425.16, subd. (b).) Thus the allegations of sexual banter and other objectionable activities in which Murray is alleged to have engaged must be disregarded for the purposes of step one.

This leaves the allegations in the cross-complaint that refer to Murray's filing of the complaint in Superior Court. Of course, the filing of a complaint in court is a paradigmatic exercise of the First Amendment right to petition the government. And it is axiomatic that "claims that arise out of the filing of [such a complaint] arise from protected activity for purposes of the anti-

---

[5] There is a split of opinions as to whether evidentiary materials are to be considered at step one of the anti-SLAPP analysis. Some courts say that "[i]n deciding whether a defendant has satisfied the first step, courts consider the 'the pleadings, *and supporting and opposing affidavits* stating the facts upon which the liability . . . is based.'" (*Williams, supra,* 100 Cal.App.5th at p. 1131, italics added, citing *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*) and § 425.16, subd. (b).) Others say that, in the step-one analysis, "'[t]he question is what is pled—*not what is proven.*'" (*Osborne v. Pleasanton Automotive Co.* (2024) 106 Cal.App.5th 361, 375, italics added, citing *Central Valley Hospitalists v. Dignity Health* (2018) 19 Cal.App.5th 203, 217, *Comstock v. Aber* (2012) 212 Cal.App.4th 931, 942, and *Baral, supra,* 1 Cal.5th at p. 396.) We need not choose a side regarding this split inasmuch the evidence each party has adduced is sufficiently in alignment with the allegations in its pleadings.

8

SLAPP statute." (*Bonni, supra,* 11 Cal.5th at p. 1024.; see also § 425.16, subd. (e).)

So, are the claims for equitable indemnity and contribution that LRI has asserted in the cross-complaint properly described as having "*arisen from*" Murray's filing of his complaint against LRI? Murray responds to this question in the affirmative. He contends "[t]he cross-complaint is a SLAPP because [his] filing of his complaint . . . is an essential element of [LRI]'s theory of liability in the cross-complaint." LRI contends the opposite. It says it "is not attacking the act of filing a claim itself, but rather Murray's behavior *prior* to filing the complaint" (italics added).

We conclude LRI has the better argument. In arriving at this conclusion we are influenced by the analyses in two opinions in particular—*Mooradian, supra,* 43 Cal.App.5th 688, and *Joslin v. Third Laguna Hills Mutual* (2020) 49 Cal.App.5th 366 (*Joslin*).

In *Mooradian,* a pair of homeowners (the homeowners) filed a complaint against several persons involved in a renovation of their home. (*Mooradian, supra,* 43 Cal.App.5th at pp. 691–694.) Among the defendants were a civil engineering firm and its principal (collectively, the civil engineers), and among the matters placed in issue were construction materials known as EPS panels. (*Ibid.*) In response to the complaint, the civil engineers filed a cross-complaint asserting causes of action for equitable indemnity and contribution against the homeowners and others.[6] (*Id.,* at p. 695.)

---

[6] The cross-complaint also asserted causes of action for express indemnity and declaratory relief. (*Mooradian, supra,* 43 Cal.App.5th at p. 695.)

> "For the equitable indemnity claim, the [civil engineers] denied liability . . . [and] claimed that the [homeowners] and/or [their architect] were wholly or partially responsible for any injuries arising from [the homeowners'] decision to use the EPS panels and that the [homeowners] should be required to pay a share of any liability imposed on the [civil engineers] in proportion to the [homeowners'] comparative negligence.
>
> "The contribution claim alleged the [civil engineers] were entitled to contribution from the [homeowners] because of any judgment against [the principal of the civil engineering firm] as a result of the [homeowners' operative] complaint."

(*Mooradian, supra,* 43 Cal.App.5th at pp. 695-696.)

The Mooradians filed an anti-SLAPP special motion to strike the cross-complaint and argued in support of the motion that "the [civil engineers]' cross-claims arose from the [homeowners'] acts in furtherance of their right of petition within the meaning of section 425.16—specifically, from the filing of the [homeowners'] complaint." (*Mooradian, supra,* 43 Cal.App.5th at p. 696.) Summarizing the homeowners' arguments and their invocation of two terms ("fault" and "resulting damages") that appear in the elements establishing an equitable indemnity cause of action (see *ante*), the Court of Appeal stated:

> "The Mooradians contend the existence of a claim of loss to be [equitably] indemnified is a necessary prerequisite to any [equitable] indemnification obligation and argue the filing of their [operative] complaint supplies an essential element of the [civil engineers]' cross-claims for indemnity. The element of 'fault,' they contend, connotes responsibility for a claim of loss; the element of 'resulting damages' refers to damages arising from a claim of loss. They assert there would be no claim of loss without the filing of their [operative] complaint."

(*Id.*, at p. 700.)

The Court of Appeal acknowledged that "a cause of action arising from the defendant's (or, as applicable here, the cross-defendant's) litigation

10

activity directly implicates the right to petition and is subject to a special motion to strike." (*Mooradian, supra,* 43 Cal.App.5th at p. 700.) "But," it continued, "to satisfy the first prong [of the anti-SLAPP analysis], the [homeowners] had to establish the [civil engineers'] causes of action *'arise from'* the [homeowners'] litigation activity; and they misunderstand the analysis employed to determine whether a claim arises from protected conduct." (*Ibid.*, italics added.) "The 'elements' analysis[,] as articulated by the Supreme Court in *Park* . . . and adopted in *Wilson*, . . . does not mean [that] *any* allegation of protected activity supporting an element of a cause of action subjects that cause of action to a challenge under section 425.16." (*Mooradian, supra,* 43 Cal.App.5th at p. 700, italics added, citing *Park, supra,* 2 Cal.5th at p. 1063 and *Wilson, supra,* 7 Cal.5th at p. 884; see also *Mooradian*, at pp. 702-704.)

Rather, "[c]ourts should only consider the elements of the challenged cause of action as part of an analysis to determine what actions by the defendant [or, in the case of a cross-complaint, what actions by the cross-defendant] form the basis for liability . . . . [T]he Supreme Court in both *Park* and *Wilson* made clear [that] *'the speech or petitioning activity itself'* must constitute *'the wrong* complained of.' " (*Mooradian, supra,* 43 Cal.App.5th at pp. 700-701, italics added.)

On the basis of this analysis, the court concluded that: " 'The filing of the [homeowners' operative] complaint is not the wrongful act forming the basis for [their] liability as alleged in the [civil engineers'] cross-claims. Rather, the alleged wrongful act that forms the basis for the . . . equitable indemnity cause of action—the alleged 'fault' for which they should be held equitably responsible for any damages suffered by the [civil engineers]—is

11

the decision [the homeowners] or their [architect] made to use the EPS panels." (*Mooradian, supra,* 43 Cal.App.5th at pp. 701.)

Similarly, in the present case, it is not Murray's filing of the complaint— but, rather, "the sexual banter, off color joking, and other [such] activities" in which he is alleged to have engaged *before* the filing of the complaint—that forms the basis for LRI's equitable indemnity and contribution causes of action.

Our conclusion in this regard is buttressed by the analysis of the Court of Appeal in *Joslin*. In that case, a homeowner's association (HOA) sued one of its homeowners (Joslin), alleging that he had violated its covenants. (*Joslin, supra,* 49 Cal.App.5th at 369.) Joslin responded by filing a cross-complaint in which he alleged that the HOA had unlawfully prevented him from renting out his home. (*Id.,* at p. 369–370.) The HOA then filed an anti-SLAPP special motion to strike the cross-complaint, alleging in essence that Joslin was "suing [it] for suing him." (*Id.,* at p. 369.) The trial court denied the motion, and the Court of Appeal affirmed. (*Ibid.*)

So doing, the Court of Appeal emphasized that "[t]he fact that an activity protected by the anti-SLAPP statute may have *triggered* a lawsuit does not necessarily mean that the causes of action *arose from* the protected activity." (*Joslin, supra,* 49 Cal.App.5th at p. 373; see also *Navellier, supra,* 29 Cal.4th at p. 89 ["that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such"]; *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 ["a claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity"].) On the basis of this distinction, the Court of Appeal concluded that "the . . . claims alleged in Joslin's cross-complaint arose from the HOA's decisions and actions, which purportedly prevented Joslin from

12

renting out (and deriving income from) his condominium, not from the HOA's filing of the complaint." (*Joslin,* at p. 374.) True, the causes of action asserted in the cross-complaint might have been *triggered* by the HOA having engaged in protected activities associated with the filing of the complaint. But, the court concluded, the causes of action "d[id] not *arise from* the . . . protected activities." (*Ibid.*)

Likewise, in the present case, the causes of action pleaded in the cross-complaint might have been *triggered* by the filing of the complaint. But, in the sense intended by the anti-SLAPP case law, they did not *arise from* it.

The soundness of our analysis is reinforced by a hypothetical scenario predicated on precisely the same employee misbehavior alleged in this case. In this alternative scenario, the misbehavior leads to a sequence of three events: First, LRI terminates the employment not of Murray but of the two colleagues with whom Murray engaged in the sexual banter. Second, those two colleagues sue LRI alleging workplace harassment attributable to Murray. Third, LRI responds with a cross-complaint in which it asserts causes of action for equitable indemnity and contribution against Murray, on the theory that Murray (along with LRI) must shoulder a portion of the financial responsibility for whatever damages his terminated colleagues might succeed in establishing they had suffered.

In this alternative scenario, the cross-complaint for equitable indemnity and contribution against Murray could not reasonably be said to have arisen from protected activity on the part of Murray, because Murray— having taken no part in the filing of the hypothetical complaint—obviously has not *engaged* in any protected activity. Rather, they arise from the workplace misbehavior that preceded the filing of the complaint. We perceive no rationale on the basis of which the analysis should be any different, in the

13

*actual* scenario, merely because it is Murray rather than his former colleagues who has initiated the litigation.  In either instance (hypothetical or actual), the wrong complained of in the cross-complaint is Murray's behavior at work; and the fact that the cross-complaint has been triggered by protected activity—be it a lawsuit initiated by Murray or a lawsuit initiated by someone else—does not mean the causes of action pleaded in it "arose from" the protected activity.

For the reasons set forth above, we conclude Murray has not carried his burden, at step one of the anti-SLAPP analysis, to show that a cause of action asserted in the cross-complaint "arises from" protected activity.  Consequently, we do not reach step two of the analysis.  (*Mooradian, supra,* 43 Cal.App.5th at p. 698.)

## III.
## Disposition

The order is affirmed.  Leonard Roofing is entitled to costs on appeal.

KELETY, J.

WE CONCUR:

DO, Acting P. J.

CASTILLO, J.

14